[No. 13480. In Bank. — September 1, 1890.]

L. W. FARRELL, RESPONDENT, v. BOARD OF TRUSTEES OF THE CITY OF SACRAMENTO ET AL., APPELLANTS.

CONSTITUTIONAL LAW — SPECIAL LEGISLATION — POLICE FORCE OF SACRAMENTO — MANDAMUS. — The act of the legislature of March, 1889, authorizing the police commissioners of the city of Sacramento to appoint policemen not exceeding thirty in number, and amending section 6 of the act of 1872, which authorized the board of police commissioners of said city to appoint a permanent police force, consisting of a captain and policemen not exceeding fifteen in number, is a special act, and forbidden by section 25 of article 4 of the constitution, and the city board of trustees cannot be compelled by *mandamus* to proceed to levy a tax under it to raise a sum of money to pay the salaries of the extra police force so appointed.

ID. — CONSTRUCTION OF CONSTITUTION — CREATION OF LOCAL OFFICES — POLICEMEN. — The provision of subdivision 28 of section 25, article 4, of the constitution, forbidding the legislature to pass special laws "creating offices, or prescribing the powers and duties of officers, in counties, cities and counties, townships, election or school districts," construing its terms in their ordinary meaning, applies to all officers who are appointed to exercise their duties in either of the particular political divisions above mentioned, and is not limited to officers representing the whole of such political divisions, and therefore includes policemen in a city.

ID. — DELEGATION OF LEGISLATIVE POWER — APPOINTMENT OF OFFICERS — SPECIAL LEGISLATION. — The power to create offices not created by the constitution is a legislative power which cannot be delegated, though the legislature may vest the appointment of officers in such individual, or officer, or board, as it may think proper; but it can neither create an office by special act, nor can it by special act vest the power to appoint an officer in any board whatever.

APPEAL from a judgment of the Superior Court of Sacramento County.

The facts are stated in the opinion of the court.

*W. S. Church,* and *Johnson, Johnson & Johnson,* for Appellants.

The act of March 14, 1889, being a special act, cannot in any manner affect the municipality of Sacramento City, which was organized sixteen years prior to the adoption of the present constitution. It is unconstitu-

tional and void. (*Desmond* v. *Dunn,* 55 Cal. 242; *Wood* v. *Election Comm'rs,* 58 Cal. 562; *Bishop* v. *City of Oakland,* 58 Cal. 572; *Staude* v. *Election Comm'rs,* 61 Cal. 313; *In re Guerrero,* 69 Cal. 89; *Thomason* v. *Ashworth,* 73 Cal. 73.) The act is also unconstitutional because it is a special act, which the legislature is inhibited from enacting. (Const., sec. 25, art. 4, subd. 33; *Earle* v. *Board of Education of San Francisco,* 55 Cal. 489; *Miller* v. *Kister,* 68 Cal. 142; *People* v. *Henshaw,* 76 Cal. 436.) The act is also unconstitutional because it is a special act creating offices, which is inhibited by the constitution. (Const., sec. 25, art. 4, subd. 28.) The act is also unconstitutional because it seeks to delegate to a special commission power over a city and its property, effects, and taxes, which the legislature is prohibited from doing. (Const., sec. 13, art. 11; *Commissioners* v. *Trustees,* 71 Cal. 310.)

*Hart & Davis,* and *Catlin & Blanchard,* for Respondent.

The act of March 14, 1889, is not repugnant to nor forbidden by any provision of our state constitution, and is a valid law. (*State* v. *County Court of Boone County,* 50 Mo. 317; 11 Am. Rep. 415; *State* v. *County Court of New Madrid,* 51 Mo. 83; *State* v. *Hitchcock,* 1 Kan. 178; 81 Am. Dec. 503; *Gentile* v. *State,* 29 Ind. 409.) The act complained of here is not an act creating offices within the meaning of subdivision 28 of section 25 of article 4 of the constitution. It merely gave the city permission to have more policemen than she had before, if it was deemed necessary for the protection and good government of the city. To say that such a permission is the creation of offices, implies a misconception of the meaning of the term " creating offices." (*Ford* v. *Board of Harbor Comm'rs,* 81 Cal. 19.) The act is not opposed to section 13 of article 11 of the constitution, because it does not delegate municipal functions to a special com-

mission. A police-officer does not exercise municipal functions. (*Farrell* v. *Bridgeport,* 45 Conn. 191; 1 Dillon on Municipal Corporations, 3d ed., sec. 210, and cases in note thereto; Pen. Code, secs. 719, 723, 728.) The duties of the board of police commissioners of Sacramento are not municipal functions, and particularly the appointment of a permanent police force is not the exercise of a municipal function. (1 Dillon on Municipal Corporations, 3d ed., sec. 58; 2 Dillon on Municipal Corporations, sec. 975, and notes thereto.) Police-officers are not the agents or servants of the city, so as to make the city responsible for their unlawful or negligent acts. The municipality in such cases represents the state or the public, and such officers are not the servants of the corporation. The police regulations of a city are not made and enforced in the interest of the city in its corporate capacity, but in the interest of the public. (*Calwell* v. *City of Boone,* 51 Iowa, 687; *Board of Trustees of Odell* v. *Schroeder,* 58 Ill. 353; *Elliott* v. *Philadelphia,* 75 Pa. St. 347; 15 Am. Rep. 591; Pen. Code, secs. 142, 150, 697, 719, 720, 816–819, 834, 836, 838, 839, 847.) As to what officers are municipal and what belong to the state, and perform duties for the state, as distinguished from the city in its corporate capacity, see *People ex rel. Le Roy* v. *Hurlbut,* 24 Mich. 44; 9 Am. Rep. 103; *State ex rel. Platt* v. *Kirk,* 44 Ind. 401; 15 Am. Rep. 239. A police-officer is an officer of the state, and not of the municipality in which he exercises his office. (1 Dillon on Municipal Corporations, sec. 210; *Burch* v. *Hardwicke,* 30 Gratt. 24; 32 Am. Rep. 640; *Doering* v. *State,* 49 Ind. 56; 19 Am. Rep. 669; *People* v. *Metropolitan Board,* 19 N. Y. 188.)

*S. C. Denson,* also for Respondent.

Police-officers do not exercise municipal functions, but functions belonging to the political department of the state sovereignty. (1 Dillon on Municipal Corporations, sec. 58; *Britton* v. *Steber,* 62 Mo. 370–374; *Chicago* v. *Wright,*

69 Ill. 326; *Atwater* v. *Baltimore,* 31 Md. 462; *State* v. *Valle,* 41 Mo. 29; *State* v. *County Court,* 34 Mo. 546; *People* v. *Common Council,* 28 Mich. 228; 15 Am. Rep. 202; *Police Comm'rs* v. *Louisville,* 3 Bush, 597; *People* v. *Draper,* 15 N. Y. 532; *State* v. *Covington,* 29 Ohio St. 102–114; *Mayor etc.* v. *Board of Police etc.,* 15 Md. 376; 74 Am. Dec. 572; *State* v. *Hunter,* 38 Kan. 578.) The mere fact that a power is intrusted to a city officer, or to a board composed in whole or in part of city officers, does not necessarily characterize the duties by them performed as municipal functions. (*Speight* v. *People,* 87 Ill. 595; *Atwater* v. *Mayor etc. of Baltimore,* 31 Md. 462.) Under a constitutional provision prohibiting the legislature from passing a special act when the desired end could be accomplished by a general law, the legislature is the sole judge as to whether, in any given case, a general act would be efficacious or a special act would be necessary. (*City of St. Louis* v. *Shields,* 62 Mo. 247; *State* v. *Hitchcock,* 1 Kan. 178; 81 Am. Dec. 507, note; *State* v. *County Court,* 50 Mo. 317; 11 Am. Rep. 415; *Gentile* v. *State,* 29 Ind. 409; *State* v. *Tucker,* 46 Ind. 355; *State* v. *County Court of New Madrid,* 51 Mo. 82; *Hall* v. *Bray,* 51 Mo. 288; *Eitel* v. *State,* 33 Ind. 201; *McGill* v. *State,* 34 Ohio St. 247.)

THORNTON, J.—Action for a writ of mandate to the board of trustees and others, above mentioned, to compel them to levy a special tax to raise a sum of money to pay the salaries of policemen, etc. Judgment was rendered for the petitioners, and the respondent appealed.

The city of Sacramento is a municipal corporation, organized in 1863, under an act of the legislature. (Stats. 1863, pp. 415 et seq.) The board of trustees is, under that act, the governing body of the corporation. (Stats. 1863, sec. 2, p. 416), and by it the board was invested with power to create and establish a city police, to prescribe their duties and compensation, and to provide for the regulation and government of the same; to

create the office of chief of police, and elect such chief and eight. policemen. (Stats. 1863, sec. 2, subds. 1, 9, pp. 416, 417.) In 1872 an act was passed amendatory of and supplementary to the act of 1863, by which the office of chief of police was created, and a board of police commissioners. (Stats. 1871–72, secs. 1, 6, pp. 243, 244.) This board was to consist of the president of the board of trustees, the chief of police, and the police judge. (Sec. 6.) The board was authorized, immediately on entering upon their duties, to appoint a permanent police force for the city, which was to consist of a captain of police and such number of policemen, not exceeding fifteen, as they might deem necessary for the protection and good government of the city. By the fourteenth section of this act it was provided that, at the time of the levy of the annual city taxes, the board of trustees should estimate the amount of money that will be required for police purposes during the fiscal year, and shall cause this money to be kept as a separate, distinct fund, to be called the police department fund, which shall be used for no other purpose whatever, except the payment of the salaries and expenses of the police department, and shall levy a special tax to meet these estimated expenses to pay the officers and expenses provided for in this act. The former act, as regards the police, was repealed. (Stats. 1871–72, sec. 15, p. 246.) In March, 1889, an act amending the act of 1872 was passed. By it the board of police commissioners was authorized to appoint policemen, not exceeding thirty in number. (Stats. 1889, p. 148.) This act went into effect immediately, and on the first day of April, 1889, the board of police commissioners, by authority of the last-mentioned act, appointed twenty-five policemen. The petitioner and the others named in his petition are the twenty-five so appointed. The board of trustees, on February, 1889, made the estimate and levy required by the fourteenth section of the act of 1872, basing this estimate and levy

on the police department as it then stood, consisting at that time of a chief of police, a captain of police, and fifteen policemen.   The sum raised by the levy of February was insufficient to pay the force subsequently appointed in April, and the board was requested, on behalf of the petitioner and the other appointees to the police force, to levy a tax to raise the sum required.   The board refused, and this proceeding was instituted to compel it to do so.

The contention here made on behalf of appellants is, that the act of 1889 amending section 6 of the act of 1872 is unconstitutional and void, and hence it imposed no obligation on the board of trustees to proceed to levy a tax under it.   It is said that the act is special, and forbidden by section 25 of article 4 of the constitution of 1879.   There can be no doubt that the act of 1889 is a special law.   It relates to a special board of trustees of one particular city, and a particular class of men to be appointed by this special board to perform the duties of their office in the one city above mentioned. Is it forbidden by the constitution?   Among other cases in which the legislature is forbidden to pass special laws is the following: "Creating offices, or prescribing the powers and duties of officers, in counties, cities and counties, townships, election or school districts." (Const., art. 4, sec. 25, subd. 28.)   Conceding, as is contended, that a police-officer is an officer of the state, and not of the municipality in which he exercises his office, it does not follow that the provision above quoted does not apply to them.   We think it applies to all officers who are appointed to exercise their duties in either of the particular political divisions above mentioned.   It is not limited to officers of such political divisions, but embraces officers in such divisions.   This interpretation gives to the language of the clause its usual and ordinary meaning, which is the true rule where the words are not employed in any technical or peculiar sense.

(*Weill* v. *Kenfield*, 54 Cal. 113.) The preposition "in" qualifies the entire clause, and is used as denoting officers who exercise their office and perform their duties within the limits of either political division mentioned in the clause. There is nothing in the context to indicate that it is used in any other sense. That the people of this state had power to put this restriction on the legislative power cannot be doubted. This power was ample as regards the police power of the city, conceding that they were state or municipal officers. The act of 1889 creates the office of policeman in the city of Sacramento. There can be no doubt of this, as to the additional number of policemen whose appointment is authorized by the act. This creation of offices, in our judgment, is forbidden by the provisions above quoted of the organic law of the state.

It is urged that "the act complained of here [referring to the act of 1889] is not an act creating offices, within the meaning of subdivision 28 of section 25 of article 4 of the constitution. It merely gave the city permission to have more policemen than she had before, if it was deemed necessary for the protection and good government of the city. To say that such a permission is the creation of offices implies a misconception of the meaning of the term 'creating offices.' This has been ruled against appellants' contention in *Ford* v. *Board*, 81 Cal. 19." In that case there was no reference in either opinion to the clause of the constitution referred to. The act under consideration did not require it. No point was there made that the act was a special act, or that it was, as such, inhibited by any provision of the constitution. Section 2521 of the Political Code, as amended in 1883, was there considered, which provided that the board of state harbor commissioners must, on entering on the duties of their office, appoint the following officers, viz.: "A secretary, an assistant secretary, an attorney, a chief engineer, a chief wharfinger, and such number of wharf

ingers and collectors as they may deem necessary." It
provided further that "such officers shall hold for a term
of four years from the dates of their respective appoint-
ments, but may be removed by the board at any time,
after due investigation, for causes affecting their official
character or competency. The order for such removal,
stating distinctly the causes therefor, must be entered
on their minutes. In case of a vacancy in such offices
by the expiration of a term, or for any other cause, the
board must fill the same by an appointment for four
years." The action was brought by Ford to compel, by
writ of mandate, the allowance and payment of a bal-
ance of his salary as collector for the month ending
July 24, 1889. It appeared by an agreed statement of
facts that Ford had been appointed by the board under
the act to the office of collector on the 9th of June, 1887;
that he had duly entered upon and continued to dis-
charge the duties of his office until he was removed in
July, 1889, for no cause affecting his official character
or competency. It further appeared that the board had
in July, 1889, abolished the office. It was held by three
of the judges of this court (Fox, McFarland, and Sharp-
stein) that the board had authority, under the statute,
to create the office of collector, and consequently had
power to abolish it at its pleasure. Beatty, C. J., filed
an opinion, in which he concurred in the judgment, in
which he repudiates the view taken in the opinion con-
curred in by the three justices just referred to, and
places his concurrence on the ground that the statute
under consideration was unconstitutional, for the reason
that it delegated to the board the power of creating an
office which pertained to the legislature, and which
power the legislature could not delegate. In this opin-
ion Works, J., concurred. Paterson, J., concurred in
the judgment, and Thornton, J., dissented. It thus ap-
pears that only three of the justices agreed in the hold-
ing that the office of collector was created by the board.

This ruling, though worthy of great consideration by reason of the ability and learning of the three distinguished judges who concurred in it, cannot be regarded as the decision of this court, and binding in any case as authority. If the offices mentioned in the statute were created by the board of harbor commissioners, the conclusion reached by Beatty, C. J., and Works, J., is supported by the sounder and better reason. According to that conclusion, the office of collector never existed, there never was a lawful incumbent, and the dismissal of Ford furnished no cause of action or ground of complaint.

Why is not the power to create an office a legislative power? Of course no reference is made here to offices created by the constitution. But as to all other offices, how can they be created other than by an act of the legislature? If the legislature cannot create offices, why the restriction on its power in subdivision 28, section 25, article 4, of the constitution? Why is the legislature forbidden to create the offices embraced in the subdivision cited, by special or local laws, if they cannot do it in the exercise of the power granted it by the constitution by a general law? There are other provisions of the constitution which show that the creation of an office is to be accomplished by legislative action. (See Const., art. 20, secs. 4, 16.) The sections cited are meaningless, unless the creation of office is a legislative function. The legislature, having created the office by statute, may vest the appointment to such office in such individual or officer or board as it may think proper. (Art. 20, sec. 4.) As in the case before us, the legislature, by the act of 1889, created the office of policeman, including captain of police, to exercise their office in the city of Sacramento, and vested the appointment of these officers in the board of police commissioners of that city.

Further, if the legislature cannot create an office by special act it certainly cannot accomplish the same thing through a special act which vests the power to appoint

to such office in any board whatever. This would be a clear evasion of the constitution. Our conclusion is, that the act of 1889 is unconstitutional and void. As this conclusion has been reached, it is unnecessary to consider the contention so earnestly made by counsel for petitioner, that the charter of the city of Sacramento can be controlled by a special law. But, conceding that it can be so controlled, we cannot hold that it can be controlled by an act which is violative of the constitution. The act under consideration is unconstitutional, and cannot be held valid for any purpose. The judgment in this case must be reversed, and the cause remanded, with direction to the court below to enter judgment for the defendants. Ordered accordingly.

PATERSON, J., concurred.

BEATTY, C. J., dissented.

SHARPSTEIN, J., and McFARLAND, J., concurred in the judgment.

WORKS, J., and FOX, J., concurring.—We concur in the judgment, on the ground that, by providing that additional policemen might be appointed by the city authorities, the legislature attempted to do indirectly, by a special statute, what it was forbidden to do directly by subdivision 28 of section 25 of article 4 of the constitution. I do not understand, however, that this point is decided against the appellant in *Ford* v. *Board*, 81 Cal. 19. We do not wish to be understood as holding that the legislature may not amend a special charter of a city, such as the city of Sacramento is acting under, by a special statute, except where, as in this case, the law enacted is forbidden by the constitution for other reasons.