[Civ. No. 2743.   Third Appellate District.—January 7, 1924.]

## T. M. RYAN, Petitioner, v. RAY L. RILEY, State Controller, etc., Respondent.

[1] APPROPRIATION — WHAT CONSTITUTES. — To constitute an "appropriation" there must be a setting apart from the public revenues of a certain sum of money for a specified object in such manner that the executive officers are authorized to use that money and no more for such specified purposes; and, in applying this principle, there must be kept in mind the distinction made between the setting aside of revenues derived from a particular source to be used for a particular purpose and moneys ordinarily intended to be paid out of the general funds of the state.

[2] ID.—SUFFICIENCY WHEN PAYABLE OUT OF GENERAL FUNDS.— Where the appropriation is made by the legislature and the money is to be paid out of the general fund, the appropriation must be specific both as to purpose and amount; neither of these requisites can be left indefinite and uncertain.

[3] MOTOR VEHICLE ACT—PAYMENT OF TRAFFIC OFFICERS—SUFFICIENCY OF APPROPRIATION.—Subdivision c of section 159 of the Motor Vehicle Act, which provides that one-half of the "net receipts" of the motor vehicle fund created by said section of the act "is hereby appropriated and shall be paid from the motor vehicle fund to the counties . . . provided, however, that there

---

1. Requisites of appropriation for official salary or expenses, notes, 22 Am. St. Rep. 638; Ann. Cas. 1915A, 1240; 16 L. R. A. (N. S.) 631; 27 L. R. A. (N. S.) 537; 49 L. R. A. (N. S.) 67.

shall be deducted from the amount to be paid hereunder to any county all amounts that may have been expended under the provisions of this act during the preceding six months to pay the compensation of state inspectors and traffic officers appointed to serve in such county," amounts to an appropriation of the entire one-half of the net receipts for the payment of traffic officers and inspectors, if in the exercise of his discretion the chief of the motor vehicle department sees fit to expend such sum or sums.

[4] ID.—APPROPRIATION FOR SINGLE PURPOSE—CONSTITUTIONAL LAW. There being but one general purpose sought to be accomplished by the Motor Vehicle Act, i. e., the regulation of traffic upon the public highways of the state, and the appropriation of moneys contained in the Motor Vehicle Act being simply a designation of funds to be used in maintaining the different branches of the motor vehicle department and furthering the purposes intended to be secured or obtained in the adoption of the motor vehicle law, the act is not violative of section 34 of article IV of the constitution, which provides that "No bill making an appropriation of money, except the budget bill, shall contain more than one item of appropriation, and that for a single and certain purpose to be therein expressed."

[5] ID.—PUBLIC OFFICERS—EMPLOYMENT IN PARTICULAR COUNTIES—CONSTITUTIONAL LAW.—The facts that the traffic officers contemplated to be appointed under the provisions of section 30 of the Motor Vehicle Act are public officers, as distinguished from mere employees, and that they are state officers, but are required by their appointment to perform their duties in a particular county, do not constitute a violation of any constitutional provision.

[6] ID.—CREATION OF OFFICE OF TRAFFIC OFFICER—LEGISLATIVE INTENT.—No particular language is necessary for the creation of an office; and the language used in the first subdivision of section 30 of the Motor Vehicle Act, which provides that "The chief of the division of motor vehicles is hereby authorized to appoint all necessary state inspectors at large and in addition thereto a sufficient number of state inspectors and traffic officers to enforce the provisions of this act in each of the counties of the state," etc., sufficiently manifest the intent of the legislature to create the office of traffic officer.

[7] ID.—AMOUNT OF COMPENSATION—DISCRETION OF LEGISLATURE.—There being no language used in section 4 of article XX of the constitution limiting the power of the legislature to provide the manner in which the compensation of traffic officers may be fixed, the matter is left within the discretion of the legislature to be determined in such mode and manner as it may see fit and prescribe.

[8] ID. — EXERCISE OF SOVEREIGNTY OF STATE — PUBLIC OFFICERS. — Whenever the person appointed pursuant to an act of the legislature, whether called an employee or an officer, exercises a part or portion howsoever small of the sovereignty of the state, such as the power to make arrest, he is a public officer.

[9] ID.—NUMBER OF TRAFFIC OFFICERS—POWER OF CHIEF OF DEPARTMENT.—The first subdivision of section 30 of the Motor Vehicle Act, which authorizes the chief of the motor vehicle department to appoint "all necessary state inspectors at large and in addition thereto a sufficient number of state inspectors and traffic officers to enforce the provisions of this act" does not give the chief of the motor vehicle department unlimited power in the appointment of traffic officers.

[10] ID. — NUMBER AND SALARIES OF OFFICERS — DELEGATION OF LEGISLATIVE AUTHORITY — CONSTITUTIONAL LAW. — The various provisions of section 30 of the Motor Vehicle Act, in providing for the appointment of such number of traffic officers as the chief of the motor vehicle division may deem necessary, and the fixing of the salaries thereof by the boards of supervisors of the various counties in connection with the chief of the motor vehicle department, and further providing that the amount of the salary shall be fixed by contract, do not constitute an unwarranted delegation of legislative power, and so violative of section 1 of article III of the constitution.

[11] ID.—UNIFORMITY OF OPERATION—DISCRETION OF CHIEF OF DEPARTMENT.—The Motor Vehicle Act is uniform in its operation, and it is not rendered unconstitutional because of the fact that whether it shall be put into effect in all the counties of the states is discretionary with the chief of the motor vehicle department.

[12] ID.—INTERFERENCE WITH COUNTY FUNDS.—Under section 159 of the Motor Vehicle Act, the payment of traffic officers may diminish the fund or funds which, under the terms and provisions of the law, may finally become county funds, but that does not constitute an interference with funds belonging to any of the counties of the state.

[13] ID.—BUDGET ACT—SUBSEQUENT ADOPTION OF MOTOR VEHICLE ACT—VALIDITY OF APPROPRIATIONS.—The fact that the Budget Act, approved May 7, 1923, made no provision whatever for the support of the motor vehicle department did not render the Motor Vehicle Act, in so far as it makes provision for the payment of officers and appropriation for salaries, violative of the budget amendment of the constitution (section 34 of article IV)—the Motor Vehicle Act having been approved subsequent to the Budget Act.

PROCEEDING in Mandamus to compel the State Controller to draw a warrant in favor of petitioner for services as traffic officer. Writ issued.

The facts are stated in the opinion of the court.

Percy E. Towne and Peter A. Breen for Petitioner.

Ralph W. Smith, Wesley E. Marten and Louis B. Diavila for Respondent.

U. S. Webb, Attorney-General, and Robert T. McKisick, Deputy Attorney-General, *Amici Curiae.*

PLUMMER, J.—On rehearing. This is an original petition seeking a writ of mandate directing and requiring the respondent as the state controller of the state of California to draw a warrant in favor of the petitioner in the sum of $175, alleged to be due him as salary for services rendered as a traffic officer in and for the county of Sacramento, appointed under the provisions of section 30 of the California Motor Vehicle Act, approved May 30, 1923 [Stats. 1923, p. 517].

The petition sets forth the various acts taken and performed by the chief of the motor vehicle department of the state of California and the board of supervisors of the county of Sacramento, from which it appears that the petitioner and the board of supervisors of said county entered into a contract providing for the payment to the petitioner of a monthly salary in the sum of $175 per month, and recommended the petitioner's appointment, as provided by said section; that said contract was also entered into by Will H. Marsh, as chief of the division of motor vehicles, and that in accordance with the recommendation made by the board of supervisors of said county of Sacramento, the petitioner was appointed a traffic officer in and for the county of Sacramento by the said Will H. Marsh, chief of the division of motor vehicles of the state of California. Application was made by the said petitioner to the respondent for the issuance of the warrant herein referred to which was refused by the respondent on the ground that the provisions of section 30 of the Motor Vehicle Act are unconstitu-

tional.  Section 30 of the Motor Vehicle Act contains the following provisions:

"The chief of the division of motor vehicles is hereby authorized to appoint all necessary state inspectors at large and in addition thereto a sufficient number of state inspectors and traffic officers to enforce the provisions of this act in each of the counties of the state and all inspectors and traffic officers appointed as provided herein are hereby vested with the authority of peace officers for the purpose of enforcing the provisions of this act.

"Boards of supervisors in their respective counties and the chief of the division of motor vehicles are hereby authorized to enter into contracts for the appointment by the chief of the division of a sufficient number of inspectors and traffic officers to serve in such counties respectively and providing for the amount of their compensation.

"Boards of supervisors in their respective counties may submit to the chief of the division a list of names of proposed traffic officers from which list the chief of the division may in his discretion make such appointments.

"The compensation of such inspectors and traffic officers appointed to serve in any particular county shall be paid by the state out of that portion of the net receipts of the motor vehicle fund which such county is entitled to receive under the provisions of this act."

Subdivision 5 of said section 30 exempts inspectors and traffic officers from the various provisions of the act creating the Civil Service Commission of the state of California.

By section 159 of the same act a fund is created in the state treasury to be known as the "Motor Vehicle Fund." It is in that section provided that the state treasurer shall deposit all moneys received by him from the division, or under the provisions of this act, into the motor vehicle fund.  Subdivision b of section 159 of the act is as follows:

"There is hereby appropriated out of such fund all moneys received as operators' license fees, and chauffeurs' license fees and duplicate operators' and chauffeurs' license fees and in addition thereto such portion of the remainder of such motor vehicle fund not exceeding in any registration year twenty per cent thereof as may be necessary for the maintenance of the division of motor vehicles to be expended by the division in carrying out the provisions of this

act. . . . The balance of said fund after the expenditure of
so much as may be permitted by this act for the support of
the division of motor vehicles shall be known as the 'net
receipts' and shall be devoted to the purposes and in the
manner herein specified.''

Subdivision c of said section 159, so far as involved in
this proceeding, reads as follows:

''One-half of such 'net receipts' is hereby appropriated
and shall be paid from the motor vehicle fund to the
counties of this state in proportion to the number of vehicles
registered in such counties as determined by the places of
residence of the owners to whom the registration certificates
are issued: provided, however, that there shall be deducted
from the amount to be paid hereunder to any county all
amounts that may have been expended under the provisions
of this act during the preceding six months to pay the com-
pensation of state inspectors and traffic officers appointed to
serve in such county. . . . ''

Subdivision e of section 159 of said act requires that the
state controller shall in the months of February and August
of each year draw his warrants upon the motor vehicle fund
in favor of the county treasurer of each county for the
amount to which said county is entitled, etc.

Eight different reasons are assigned by the respondent
why the provisions of section 30 of the Motor Vehicle Act
are void and therefore why the petitioner is not entitled to
a warrant drawn against any of the motor vehicle funds
now in the state treasury. These reasons are as follows:

(1) The controller has no means of knowing if funds are
available for payment of the petitioner's claim under the
contract.

(2) The controller is not authorized to draw his warrant
except upon an appropriation made by the legislature. The
''California Vehicle Act'' makes no appropriation for the
payment of traffic officers.

(3) There is more than one item of appropriation con-
tained in the ''California Vehicle Act.''

(4) Traffic officers appointed to act in the various counties
are state officers.

(5) The legislature cannot delegate to the chief of the
motor vehicle division and the board of county supervisors

the power to fix salaries of, and create offices of, state traffic officers in the various counties.

(6) The "California Vehicle Act" is not uniform in its operation.

(7) The payment of traffic officers under the "California Vehicle Act" is an unlawful interference with county funds.

(8) The Budget Act of the legislature of 1923 makes no provision for the payment of inspectors or traffic officers.

Owing to the fact that it was admitted upon argument herein that there are sufficient funds in the hands of the controller available for meeting the demands of the petitioner herein, if otherwise valid, objection number (1) need not be further considered.

Section 22, article IV, of the state constitution reads: "No money shall be drawn from the treasury but in consequence of appropriation made by law, and upon warrants duly drawn thereon by the controller." And subdivision 17, section 433, of the Political Code also specifies: "That no warrant must be drawn unless authorized by law, and upon an unexhausted specific appropriation provided by law to meet the same." Does the Motor Vehicle Act make an appropriation for the payment of traffic officers under the provisions just quoted? The definition of an appropriation given in *Ingram* v. *Colgan*, 106 Cal. 117 [46 Am. St. Rep. 221, 28 L. R. A. 187, 38 Pac. 315, 39 Pac. 437], appears to be the one adopted by all the cases having to do with this question, to wit, "to an appropriation, within the meaning of the constitution, nothing more is requisite than a designation of the amount and the fund out of which it shall be paid."

[1] There must be a setting apart from the public revenues of a certain sum of money for a specified object in such manner that the executive officers are authorized to use that money and no more for such specified purposes. In applying this principle in the various cases defining the word "appropriation" and the cases based upon the different acts of the legislature in making appropriations, there must be kept in mind the distinction made between the setting aside of revenues derived from a particular source to be used for a particular purpose and moneys ordinarily intended to be paid out of the general funds of the state. [2] Where the appropriation is made by the legislature and

the money is to be paid out of the general fund there seems to be no conflict in the cases and the appropriation must be specific both as to purpose and amount; neither of these requisites can be left indefinite nor uncertain. This is shown by the principal case cited by respondent and relied upon by the supreme court of this state and many other courts, to wit, the case of *Ristine* v. *State,* 20 Ind. 328.

The Ristine case makes the distinction which we have above indicated. It is there said: "An appropriation may be made in different modes. It may be made by an act setting apart and specifically appropriating the money derived from a particular source of revenue to a particular purpose. Our swamp-land act is of this character."

Section 26 of the Swamp Land Act of Indiana reads: "The amount of money paid into the office of the treasurer of state, from the different counties, for the sale of swamp lands, shall constitute a special fund for the following purposes, and for no other, to wit: First. To pay the expenses of the selection thereof under the act of Congress donating them, as ascertained by law. Second. To pay the expenses of preparing maps and plats thereof, the expense of the sale thereof, and all other expenses necessarily incurred in the sale thereof. Third. To pay the commissioners and engineers for their services, as hereinafter provided. Fourth. To pay for the expenses of reclaiming by ditching, dyking, or other necessary and proper means of reclaiming the said swamp lands."

In *Lange* v. *Stover,* 19 Ind. 175, the supreme court of Indiana, in passing upon the sufficiency of the act just quoted to constitute an appropriation, said: "We think the statutes on the subject of swamp lands make an ample appropriation of the swamp land fund to the payment of legitimate claims against that fund. The auditor is authorized to draw his warrant, in a proper case, upon these funds and no other or further appropriation is necessary than is found in the statutes above referred to."

The same ruling is found in *Dodd* v. *Miller,* 14 Ind. 433. In that case, however, it was found that the fund was exhausted and for that reason the writ of mandate prayed for was denied.

In *Blaine County Inv. Co.* v. *Gallet,* 35 Idaho, 102 [204 Pac. 1066], the supreme court of Idaho, in passing upon the

validity of an attempted appropriation, refers to this distinction and also as to the intent of the legislature in making an appropriation of the entire general fund, and where it is clear that the entire general fund is not appropriated or intended to be appropriated then and in that case there must be the specific designation and limitation set forth in the case of *Ingram* v. *Colgan, supra,* and also in *Ristine* v. *State, supra,* and other cases following the same rule as to what constitutes an appropriation.

[3] Referring to subdivision b of section 159 of the Motor Vehicle Act of this state, it will be observed that the legislature, after having created a motor vehicle fund in subdivision a, explicitly appropriates out of such fund all moneys received from certain specified sources to be applied toward paying the expenses of maintaining the motor vehicle department and the expenses incurred in carrying out the provisions of the Motor Vehicle Act, and after deducting such expenses the balance of said fund shall constitute what is known as net receipts, and by subdivision c of the same section one-half of such net receipts is appropriated to the counties in proportion to the number of motor vehicles registered, less whatever sum has been paid out as salary or compensation to traffic officers and inspectors. If the act is otherwise valid, we think this would amount to an appropriation of the entire one-half of the net receipts for the payment of traffic officers and inspectors, if in the exercise of his discretion the chief of the motor vehicle department saw fit to expend such sum or sums. Were the various items of money to be paid out of the general fund, we think the objection urged by respondent would be good, but as against a special fund created by the legislature for a special purpose and derived from a special source, we think the exception pointed out in the Ristine case is an exception to the general rule and is applicable to the case at bar.

[4] As we read the Motor Vehicle Act, we do not find anything therein contravening section 34 of article IV of the constitution, which provides as follows: "No bill making an appropriation of money, except the budget bill, shall contain more than one item of appropriation, and that for a single and certain purpose to be therein expressed."

There is but one general purpose sought to be accomplished by the Motor Vehicle Act, i. e., the regulation of

traffic upon the public highways of the state, and the appropriation of moneys contained in the Motor Vehicle Act is simply a designation of funds to be used in maintaining the different branches of the motor vehicle department and furthering the purposes intended to be secured or obtained in the adoption of the motor vehicle law. All the officers referred to in the Motor Vehicle Act are intended to be and we think may reasonably be denominated members of the general staff or corps making up the motor vehicle department in charge of one person denominated the chief of the motor vehicle department.

It is also to be noted in this connection that the funds dealt with by the motor vehicle law are special funds arising from the use of the highways by the people of the state and are not derived by general taxation or from general sources, and that the remainder of the funds so specially raised, after paying expenses of providing for safeguarding the highways, are to be used in connection with the maintenance of the same. In other words, all moneys appropriated or referred to in the Motor Vehicle Act have to do with the highways of the state and the regulation of traffic thereon.

[5] That the traffic officers contemplated to be appointed under the provisions of section 30 of the Motor Vehicle Act are state officers may be admitted, but this fact does not appear to us to involve any constitutional question, even though the officer was appointed for and required by his appointment to perform his duties in a particular county. It may also be admitted that traffic officers come under the definition of what is known as public officers as distinguished from mere employees. We find no constitutional provision bearing upon this particular question, and, hence, there is no reason to conclude that the power of the legislature to make provision for such officers is in anywise limited. Objection number (4), therefore, seems to us devoid of merit.

Objection number (5), to wit, "That the legislature cannot delegate to the chief of the Motor Vehicle Division and the Board of County Supervisors the power to fix salaries of, and create offices of, state traffic officers in the various counties," is one that has given us much concern and which has caused us to give further consideration to the questions presented by the petition for a writ of mandate herein,

Section 1 of article III of the state constitution provides: "The powers of the government of the state of California shall be divided into three separate departments—the legislative, executive, and judicial; and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except as in this Constitution expressly directed or permitted."

Section 4 of article XX of the constitution reads: "All officers or commissioners whose election or appointment is not provided for by this Constitution, and all officers or commissioners whose offices or duties may hereafter be created by law, shall be elected by the people, or appointed, as the legislature may direct."

Under section 4 of article XX of the constitution, the offices being statutory and not constitutional, if the office of traffic officers is in fact created by the act of the legislature and the other requirements complied with, the fact that the appointment is in and of itself left with the chief of the motor vehicle department, or with the chief of the motor vehicle department and the board of supervisors of any particular county, would not in and of itself be an unwarranted delegation of legislative power. The language of section 4 of article XX expressly contemplates that the election or the appointment of such officers may be made just as the legislature may direct. In other words, the legislature might have directed the appointment to be made by the chief of the motor vehicle department or by the boards of supervisors of the respective counties without in any way contravening the provisions of the section just referred to. The manner of appointment is purely optional with the legislature. Does the first subdivision of section 30 of the Motor Vehicle Act create the office of traffic officer? It reads as follows: "The chief of the division of motor vehicles is hereby authorized to appoint all necessary state inspectors at large and in addition thereto a sufficient number of state inspectors and traffic officers to enforce the provisions of this act in each of the counties of the state," etc.

Upon first impression it might appear questionable as to whether any such office was in fact created, but upon further consideration and investigation it seems clear that the lau-

guage used conveys the intent as well as embodies the intent of the legislature to call into existence such an office notwithstanding the fact that the functions of that office are to be gathered only from the general terms of the section, to wit, to enforce the provisions of the Motor Vehicle Act, and that the number of persons exercising the functions of such office or to exercise the same is not specifically set forth. In other words, it is an office with functions to be performed by one or more persons, so that the question of vacancy or unoccupied position does not enter into the question of determining the existence or nonexistence of the office.

The language used is almost identical with that which occurs in the provisions of the statutes and the codes having to do with many of the other departments of the state government such as prison directors, fish and game commissioners, lunacy commission, directors of industrial homes, board of directors of California schools for deaf, dumb, and blind, board of pilot commissioners, etc.

[6] No particular language appears to be necessary for the creation of an office. It is sufficient if the intent of the legislature is so manifested by the language used. (*Childs v. State*, 4 Okl. Cr. 474 [33 L. R. A. (N. S.) 563, 113 Pac. 545].) That the language used in the first subdivision of section 30 of the Motor Vehicle Act sufficiently manifests the intent of the legislature to create the office of traffic officer is supported by the case of *Scott v. Boyle*, 164 Cal. 321 [128 Pac. 941], where an act of the legislature approved March 18, 1911 [Stats. 1911, p. 383], was held sufficient to create the position of sealer of weights and measures. Section 4 of that act reads as follows: "The respective counties, incorporated cities, incorporated towns and incorporated cities and counties of the state are hereby authorized to appoint sealers of weights and measures." Further illustrations might be given but we deem the foregoing sufficient.

The number of officers to fill the office or to exercise the functions thereof is not designated and no compensation or salary is fixed by the legislature. The necessity for the appointment of a person or persons to be designated as such officer or officers and the number for each county are left to the discretion of the chief of the motor vehicle department. The amount of the salary to be paid or the compensation to be awarded is left to the boards of supervisors and the chief

of the motor vehicle division, and is to be ascertained by
contracting with the person or persons to be appointed to
exercise the function of traffic officer.  Do the various pro-
visions of section 30 of the Motor Vehicle Act, in providing
for the appointment of such number of traffic officers as the
chief of the motor vehicle division may deem necessary, and
the fixing of the salaries thereof by the boards of super-
visors of the various counties in connection with the chief of
the motor vehicle department, and further providing that
the amount of the salary shall be fixed by contract, consti-
tute an unwarranted delegation of legislative power, and so
violative of section 1 of article III of the constitution here-
tofore referred to?

It is not difficult to quote general definitions as to powers
which may be exercised by the respective departments of the
state government, but to make application of such definitions
under the constantly changing conditions as they are pre-
sented from day to day, and so apply the language of the
constitution as not to hinder such development, and yet give
true expression to the fundamental law as expressed in the
constitution adopted by the people, is not always easy or
free from uncertainty.  The language of the supreme court
of Wisconsin in the case of the Appointment of a Revisor,
as reported in 141 Wis. 597 [18 Ann. Cas. 1177, 124 N. W.
671], expressed clearly the idea we have in mind:

"It is easy to give general definitions of the three great
governmental powers.  The legislative power is the power
which makes the laws; the executive, the power which en-
forces them; and the judicial, the power which expounds
and applies them.  Would that it were as easy to apply
these general definitions to a concrete case!  It is familiar
to all who have considered the subject at all that between
these several powers, which seem so distinct in their general
character, there are great borderlands of power which may
be said to approach nearer and nearer until they merge
gradually into each other.  In these borderlands it is often
difficult to tell where one power ends and the other begins.
This was not so marked a condition in earlier and simpler
conditions of society as it is to-day.  With the development
of the complex conditions of modern civilization there have
come governmental necessities undreamed of by our fathers.
Fifty years ago there was no necessity for that new and re-

markable governmental agency known as the 'commission,' while now it fills a wonderful and increasingly important place in our governmental scheme. Though not named in the constitutions and not dreamed of by their makers, the commissions which regulate and control public utilities of the states and the nation are to-day wielding powers scarce second to the powers of either of the three original departments of the government. Though they are truly executive agencies and have neither legislative nor judicial powers, they are daily doing many things which vitally affect the life, liberty, and happiness of the people, and in doing these acts they are exercising powers trenching closely on the judicial and the legislative. In effect they decide real controversies like courts, and they daily coerce vast interests by regulations which fifty years ago would have been thought to be nothing short of legislation; yet in the exercise of these powers they have been almost universally sustained. This does not mean that the distinction between legislative, executive, and judicial functions has passed away, or that the constitutional division of powers is worn out, but simply that as matter of fact it is impossible to say at any given place: here is a line where legislative power ends and judicial power begins; all on one side of this line is legislative and all on the other side is judicial, and no single power can be both. Each department has exclusive functions which no other department can perform, but this does not mean that there may not be functions common to all the departments. It is the exclusive function of the legislature to make laws, and it is the exclusive function of the courts to expound the laws; but the power of neither department is exhausted by the performance of such exclusive function. There are many other governmental operations and duties not properly to be classified under either head, nor exclusively executive in their character, and which may be performed by inferior officers or agents in aid of the functions of either great department.

"Appointment to office, while generally called an executive function, cannot under our constitution be classed as exclusively a function of either of the three great departments."

It will be noted that section 4 of article XX of the constitution is silent upon the subject of the manner in which

the salaries of the officers provided to be appointed in accordance with that section shall be fixed. In other words, it contains no words of limitation or prohibition, and, therefore, under the ordinary rules of construction leaves the matter entirely with the legislature. There are no limitations or specifications as found in the section of the constitution having to do with the fixing of salaries of county officers wherein it is distinctly provided that the legislature must fix the same according to duties to be performed.

It is generally held in those states where there is no constitutional provision setting forth the manner or the mode of fixing the salaries of county officers that such matters may be properly delegated to local authorities. In 12 C. J. 859 we find the general rule stated as follows: "In general, statutes authorizing local authorities to fix the salaries of local officers are valid; as, for example, a statute authorizing the board of county commissioners to regulate the fees of justices of the peace in certain cases, and to fix the salaries of county officers; a statute authorizing police commissioners to fix the salaries of policemen; a statute authorizing a district or county court to fix the salary of the county attorney, or deputies or assistants of the court; and it has even been held that municipal corporations may be authorized to fix the salaries of certain county officers whose duties are performed within such corporations. But when the constitution provides that the compensation of certain local officers shall be regulated by general and uniform legislative acts, a board of supervisors can not be empowered by the legislature to change or to suspend the provisions of such an act in relation to a particular officer. Nor can the legislature delegate the power of determining such compensation to county commissioners." A distinction is also made between the delegation of a power which may be rightfully exercised by the legislature and one which must be exercised by the legislature. In the former it has been held that such delegation is largely discretionary while in the latter that such delegation is not permissible. In other words, what the constitution provides that the legislature itself must do cannot be delegated to some other person or body of persons. The rule as to power of appointment is set forth in 29 Cyc. 1369 in these words: "It is one of the principles of the law of the United States that, in the absence of a constitutional

provision to the contrary, any one of the three departments of the government may, under the authority of a statute, appoint its own subordinates. Although there is some conflict, the better rule would seem to be that in the absence of some constitutional provision the power to appoint may also, if the statutes of the legislature so provide, be exercised for any class of officers by any of the three governmental departments." And on the question of compensation in the same volume, page 1426, it is said: "The amount of compensation is, in the absence of other provision, to be fixed by the legislature which may, however, delegate its power, and which of course must observe all constitutional limitations. A common limitation is that the compensation of officers must be fixed by general law. Where the provision of law fixing the compensation is not clear, it should be given the construction most favorable to the government."

[7] There being no language used in section 4 of article XX of the constitution limiting the power of the legislature to provide the manner in which the compensation of traffic officers may be fixed, we conclude that such matter was left within and lies within the discretion of the legislature to be determined in such mode and manner as it may see fit and prescribe. In *State* v. *Turner*, 37 N. D. 635 [164 N. W. 924], the supreme court of North Dakota, having under consideration an act known as the Uniform State Grading Act of that state, providing for the appointment of inspectors and for the fixing of salaries thereof, disposed of this question as follows: "The only power that is delegated is the power to fix salaries and to determine the number of inspectors, etc. It is true that no limit is placed on the cost of the upkeep of the buildings where scales are kept, but this, of course, must be reasonable, and all of the expense must be within the limit of the sum total of the fees collected. If such a statute is unconstitutional, then all statutes are unconstitutional which create boards of trustees of our State University, Agricultural College, or Normal Schools and other schools and public institutions."

The objection which we have denominated number (5) raises the further question that the section is void because it does not limit or specify the number of traffic officers to be appointed. In this particular the act is very similar to the several acts creating the various departments and in-

stitutions to which we have referred. The language of sub-
division 1, section 642, of the Political Code relating to
the duties of fish and game commissioners is very similar.
That subdivision reads as follows: "To see that the laws
for the protection and preservation of fish and game are
strictly enforced, and for that purpose they may from time
to time, employ such assistants as they shall consider neces-
sary, which persons so appointed as assistants shall be public
officers and shall have all the powers and authority of
sheriffs and other peace officers to make arrests for violations
of such laws and so to serve all processes and notices,
throughout the state." A number of acts creating the differ-
ent boards and commissions provided for the appointment
of secretaries, clerks, and assistants without specifying the
number or fixing the amount of the compensation to be
allowed the persons so appointed. It is suggested that most
of these persons denominated officers, etc., are in reality
only employees. [8] This may be true in many instances,
but wherever such person, whether called an employee or
an officer, exercises a part or portion howsoever small of the
sovereignty of the state, such as the power to make arrest,
then and in that case he is a public officer whether called an
employee or an officer under the statute providing for his
appointment. By reference to subdivision 1 of section 642
of the Political Code, which we have just quoted, it will be
seen that the persons whose appointments are therein pro-
vided for are not only denominated public officers, but are
invested with the exercise of a part of the general sover-
eignty of the people of the state of California, to wit, the
power to make arrest. This is true of the persons employed
as guards at the state prison and other public institutions,
the safeguarding of which necessitates investing such em-
ployees or officers with the power to make arrest. [9] Nor
is the language used in the first subdivision of section 30
such as to give unlimited power to the chief of the motor
vehicle department in the appointment of traffic officers. The
reading of that subdivision in this particular is:

"Appoint all necessary state inspectors at large and in
addition thereto a sufficient number of state inspectors and
traffic officers to enforce the provisions of this act, . . . and
all inspectors and traffic officers appointed as provided

herein are hereby vested with the authority of peace officers. . . . " .

While this language would ordinarily appear to give unlimited authority as to the number of traffic officers to be appointed, this language has received judicial construction and following the usual course of reasoning in such cases it must be presumed that the legislature adopted the language used in the act in view of the construction theretofore given it by the courts. In *Riley* v. *Chambers*, 181 Cal. 589 [8 A. L. R. 418, 185 Pac. 855], in dealing with the power to license realty brokers, etc., where the language used is practically the same as above quoted, the supreme court says: "Another objection is that the act is invalid because it gives the commissioner arbitrary power to determine who may have a license and, therefore, who may lawfully engage in the real estate business. If such arbitrary power were in fact conferred by the act, it may well be that the objection would be good. But such power is not conferred either in the granting of licenses or in their revocation."

The objection to the act on this ground was held not well taken. In *Tarpey* v. *McClure*, 190 Cal. 593 [213 Pac. 983], the supreme court of this state affirms the case of *Riley* v. *Chambers* and also construes the phrase "such as he may deem necessary" as follows:

"The provision in section 1 authorizing the State Engineer to employ such engineers, attorneys, and other assistants as he may deem necessary, and to fix their compensation, does not contravene the rule in *Farrell* v. *Board of Trustees*, 85 Cal. 408 [24 Pac. 868], for two reasons: First, because the assistants here provided for are not officers but mere employees; second, because the discretion as to the number to be employed is not unguided, as it was in the Farrell case. The phrase 'such as he may deem necessary,' as here used, is precisely analogous to the provision under consideration in the case of *Riley* v. *Chambers, supra,* and which was there held not to confer arbitrary power. . . . "

In *Scott* v. *Boyle*, 164 Cal. 321 [128 Pac. 941], sections 4 and 5 of the act, approved March 18, 1911, were upheld. Section 4 provided for the appointment in the plural number, without stating the number, and section 5 provided that the appointing power "shall fix the compensation of such

officer and provide deputies for such officer and fix their compensation.'' The case of *Scott* v. *Boyle* also points out another distinction which is applicable and differentiates it from the acts applying to the ordinary political functions of counties and cities, and of many boards and commissions, to wit: The exercise of the general police power of the state which is involved in the enforcement of the laws adopted to protect the lives and property of persons using the highways. The several questions involved herein are referred to by the supreme court in that case as follows:

''It is further suggested that they are county officers, that section 5 of Art. XI provides that the legislature shall regulate the compensation of all such officers in proportion to duties and, consequently, that it cannot delegate to the board of supervisors of the county or city and county the duty of fixing the salaries of such officers instead of doing so itself. It is true that the general principle is that when the people by their constitution impose an express duty of this kind on the legislature, that body cannot, in general, delegate such duty to any subordinate body. (*Dougherty* v. *Austin*, 94 Cal. 601 [16 L. R. A. 161, 28 Pac. 834, 29 Pac. 1092].) That case decided that said section 5 confided to the legislature itself the duty to regulate and fix the compensation of county officers and that it could not delegate this duty, or any part of it, to a county board of supervisors. We are of the opinion that the provision of that section requiring the legislature to regulate the compensation of the officers referred to therein does not apply to offices created by the legislature, under said section 14, to exercise a part of the police powers of the state which the provisions of the latter section, both in its original form and as amended, recognize as something distinct from the general political functions of counties and cities and the general scheme of county or municipal government.

''The act applies throughout the state to all the counties, cities and municipalities thereof. It is therefore uniform in its operation. The fact that it does not make it compulsory upon the respective counties and municipalities to appoint such sealers does not render it lacking in the uniformity necessary to a compliance with section 11 of Art. I of the constitution, nor make it a special law

within the meaning of subdivisions 9, 28, and 29 of section 25, of Art. IV.''

We come now. to the consideration of the cases which, upon first reading, may very readily be held to prohibit the legislation with which we have been dealing by reason of the general language used therein, but which, upon closer inspection and further analysis, are distinguishable from and not decisive of the issues herein involved. The case of *Farrell* v. *Board of Trustees*, 85 Cal. 408 [24 Pac. 868], cited in argument, and referred to by many of the subsequent decisions of the supreme court, had to do with the attempted investing of the police commissioners of the city of Sacramento with the power to appoint policemen, not exceeding thirty in number, and consequently the construing of subdivision 28 of section 25 of article IV of the constitution, forbidding the legislature to pass special 'laws creating offices, or prescribing the powers and duties of officers, in counties, cities and counties, etc. In the decision of the Farrell case, the case of *Ford* v. *Board, of Harbor Commrs.*, 81 Cal. 19 [22 Pac. 278], was taken up and considered. In the Ford case it was pointed out that three of the justices held that the power to create an office and to make appointment thereto could be delegated, and that two of the justices dissented therefrom. The question was then asked, why is not the power to create an office a legislative power? It is not necessary to construe the language used as an attempted answer to this question. It is sufficient to say that the opinion does hold that where the legislature has created the office it may vest the appointment thereto in such individual or officers as it may think proper. It was then held that the provisions of the constitution to which we have referred were prohibitory of the power attempted to be delegated. Similar questions were before the supreme court of this state in the case of *People* v. *Wheeler*, 136 Cal. 652 [69 Pac. 435], and in *Logan* v. *Shields*, 190 Cal. 661 [214 Pac. 45]. As the latter case refers to the former and adopts its language, we quote from the latter case, to wit:

''In the case of *People* v. *Wheeler*, 136 Cal. 652 [69 Pac. 435], this court held that a county physician was not an officer within the meaning of the constitutional provision above quoted. (Referring to section 5 of art. II.) With

reference to the question as to whether or not an office was created by the appointment of the county physician it was said: 'It may be added that if the act could be thus construed, it would be clearly unconstitutional. For the effect of the act would then be to delegate to the board of supervisors the power to create an indefinite number of public officers, with varying duties and compensation; which cannot be regarded as within the constitutional powers of the legislature. ''The legislature cannot commit to the discretion of others the important function of creating public offices in unlimited or indefinite number.'' (*Ford* v. *Harbor Commissioners,* 81 Cal. 37 [22 Pac. 278]; *Farrell* v. *Board of Trustees,* 85 Cal. 415 [24 Pac. 868].) Still more obviously will this be the case if the supposed office be regarded as a county office; as, ''if an office at all,'' it shall be. (*People* v. *Harrington,* 63 Cal. 260.) For with relation to county offices, it is the constitutional duty of the legislature not only to provide for the election of the officers, but also to fix their terms of office, to prescribe their duties, and to regulate their salaries or compensation; and this duty could not be delegated to the board of supervisors or others. (Const., art. II, sec. 5.)' ''

In *Coulter* v. *Pool,* 187 Cal. 181 [201 Pac. 120], the court had under consideration a statute attempting to authorize the board of supervisors to employ a county engineer and fix his salary, and it was held that such delegation was beyond the power of the legislature. The language used in the Wheeler case, *supra,* and also in the case of *Logan* v. *Shields, supra,* indicates that the conferring of the power to appoint an officer delegated the power to create the office. The distinction between the two powers exists which we have pointed out, and not being necessary to the decision of any of the cases to which we are now referring, was probably not called to the attention of the court and no occasion therefore arose for drawing the line between the exercise of the two powers which we are here called upon to do. Again, these cases have to do with the powers conferred and the limitations set forth in section 5 of article II, relating particularly and explicitly to county officers. That section provides that the legislature shall by general and uniform acts provide for the election or appointment of county officers, prescribe their duties, fix their terms

of office, regulate their compensation, etc. Section 5 of article II is mandatory in its terms as to what the legislature itself shall do and thus expressly limits the power of the legislature as to what it may authorize others to do.

None of these mandatory provisions or limitations appear in section 20 of article IV of the constitution, wherein the legislature is authorized to provide for the election or appointment of all officers or commissioners not provided for by this constitution. It necessarily follows that in the general language used in the cases having to do with questions governed by the language found in section 5, article II, must be read in connection with the issues actually presented and actually decided. Thus the language found in *People* v. *Wheeler, supra,* and approved in *Logan* v. *Shields,* to wit: "The legislature cannot commit to the discretion of others the important function of creating public office in unlimited or indefinite number," must be held to refer to and be governed by the limitations and proscriptions set forth in the section and article of the constitution having to do with the creation of county offices, as that was the question then and there being decided. In the case at bar, we have to do with public officers of the state created by the legislature of the state and appointed as hereinbefore set forth for the purpose of exercising the general police powers of the state. **[10]** In view of what we have said and, also, in view of the general course of legislation pursued by the state of California for a number of years and in view of the distinction which we have heretofore drawn between the various sections of the constitution referred to, we are constrained to hold that the fifth objection dealt with herein is untenable and, in so holding, the language of Associate Justice Hart used in the case of *Stephens* v. *Chambers,* 34 Cal. App. 660 [168 Pac. 595], best expresses our views:

"A written constitution, like a statute, cannot so deal with particulars as to meet or provide for every case or contingency which may arise and of which legislative cognizance is allowable if necessary to the complete enjoyment of those privileges, immunities, and rights which are of the essence, and, indeed, the primary and foremost objects of a government in which, like ours, ultimate sovereignty is in the people themselves. By this we do not mean to say

that the limitations or barriers contained in the constitution against the exercise of legislative power may be set aside or disregarded, or that the intent of the organic law, as it is to be gathered from the instrument itself, shall not in all cases prevail. Nor do we intend thus to imply that the courts, in the construction of a written constitution, may be governed by a change in public sentiment as to any subject to which express attention is given and as to which limitations are fixed by the constitution. But what we do maintain is that, since a written constitution is intended as and is the mere framework according to whose general outlines specific legislation must be framed and modeled, and is therefore, as stated and is essentially true, necessarily couched in general terms or language, it is not to be interpreted according to narrow or super-technical principles, but liberally and on broad general lines, so that it may accomplish in full measure the objects of its establishment and so carry out the great principles of government.''

[11]     The sixth objection urged by respondent has been answered in some of the cases cited herein, in dealing with objection number 5. The act is uniform in its operation, but whether it shall be put into effect in all of the counties of the state, is discretionary with the chief of the motor vehicle department, and is similar in that respect to statutes upheld, having to do with the appointment of county health officers, etc.

[12]     The seventh objection urged by respondent is that the payment of the traffic officers as officers of the state is an unlawful interference with county funds. The wording of section 159 of the Motor Vehicle Act, in itself, answers this objection. No funds belonging to any of the counties of the state are used in the payment of traffic officers. The payment of traffic officers may diminish the fund or funds which, under the terms and provisions of the motor vehicle law, may finally become county funds, but that is not an interference with funds belonging to any of the counties of the state. The payment of traffic officers out of the money received by the motor vehicle department as fees, etc., from the citizens of the various counties of the state is payment made out of state funds and this is true even though the payment to a particular traffic officer appointed

for a particular county is paid out of the funds received as fees from the citizens, or residents of the particular county involved.

[13]  It is further objected that the Motor Vehicle Act, in so far as it makes provision for the payment of officers and appropriation for salaries, is violative of section 34 of article IV, generally known as the budget amendment to the constitution, in that the Budget Act, approved May 7, 1923 [Stats. 1923, p. 242], makes no provision whatever for the support of the motor vehicle department.

The budget amendment provides that: ''The governor shall, within the first thirty days of each regular session of the legislature . . . submit to the legislature . . . a budget containing a complete plan and itemized statement of all proposed expenditures of the state provided by existing law or recommended by him, and of all its institutions, departments, boards, bureaus, etc., . . . for each fiscal year of the ensuing biennial period, etc.''

A recommendation was made by the Governor as to the number of state inspectors, etc., but the Budget Act itself, as finally passed by the legislature and approved by the Governor, contained, as hereinbefore stated, no provisions whatever for the support of the motor vehicle department. Does this militate against the motor vehicle law? We think not. The section of the constitution referred to contains the further provision: ''Until the budget bill has been finally enacted, neither house shall place upon final passage any other appropriation bill, except emergency bills recommended by the governor or appropriations for salaries, mileage and expenses of the Senate and Assembly. . . . In any appropriation bill passed by the legislature, the Governor may reduce or eliminate any one or more items of appropriation of money while approving other portions of the bill, etc.''

It thus plainly appears that the power of the legislature to pass other appropriation bills than the budget bill is only limited in point of time, i. e., no such bill can be passed until the budget bill is first disposed of, which necessarily carries with it a correlative interpretation that when the budget bill has been disposed of, other appropriation bills may be considered, passed by the legislature and presented to the Governor for approval. The

budget bill passed by the legislature in 1923 was approved on the seventh day of May of that year. The Motor Vehicle Act, now before us for consideration, was approved on May 30, 1923. It thus appears that the very terms of the constitution were complied with and the Motor Vehicle Act was not acted upon until the legislature had the power so to do, and the Governor possessed the authority to affix his approval to such legislation. While necessity does not authorize reading into a section of the constitution words not therein found, yet the very necessities of the case called for the insertion in the amendment of the provision giving power to the legislature which we have just set forth. Otherwise any omission on the part of the Governor in relation to the preparation of the budget bill, or any omission on the part of the legislature to include therein appropriations for the various departments of the state, would render it impossible to correct errors or omissions in legislation and tend to leave the state crippled or hampered in its departmental functions, whenever in any case the necessities and requirements of the different departments have not been fully set forth in the budget bill, as passed by the legislature. As we read the constitutional amendment providing for the submission to the legislature by the Governor of the budget bill, we find no limitation to the power either of the Governor to recommend or the legislature to pass acts such as the motor vehicle law containing provisions for the support and maintenance of the department dealt with and intended to be maintained.

Adopting and following, without setting forth the general rules applicable to the construction of statutes and the determination of their validity when constitutional questions are raised, that such construction shall be given as will uphold the act of the legislature when such a construction may reasonably be given, and, also, where a reasonable doubt exists as to the constitutional exercise of the power and also where it does not clearly appear that any constitutional limitations have been transgressed, that the act under consideration should be upheld, we conclude, upon this rehearing and reconsideration, that the sections of the Motor Vehicle Act referred to are valid and subsisting provisions of the motor vehicle law, and that the petitioner herein is entitled to a. writ of man-

date, directing the drawing of a warrant for his salary in the sum of $175, as prayed for.

Let the writ issue as prayed for.

Hart, J., and Finch, P. J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 6, 1924.

All the Justices concurred.