### RIGGS v. LEININGER et al.

No. 18327. Opinion Filed June 11, 1929.

T. M. McCombs and Leon S. Hirsh, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Wm. L. Murphy, Asst. Atty. Gen., for defendants in error.

DIFFENDAFFER, C. This is an appeal from a decree denying in part an injunction, wherein plaintiff sought to have defendants and each of them, as members of the State Highway Commission, enjoined from appointing special agents to collect the automobile license tax and issuing certificates of title to automobile owners and enjoining such agents from charging certain fees in connection therewith, and to enjoin the State Highway Commission from furnishing and turning over to such agents the supplies required for the issuance of license tags and certificates of title.

Plaintiff alleges in his petition that he is a general and special taxpayer of the state of Oklahoma and the owner of both real and personal property within the state. He complains of defendants in that they, as the State Highway Commission, on or about the 14th day of April, 1927, appointed certain persons throughout the state, who were not clerks of the state of Oklahoma, and designated them as "auto tag collectors," and had turned over to them certain supplies consisting of application blanks for registration of motor vehicles, number plates and other supplies necessary for the proper registration of motor vehicles under the laws of the state of Oklahoma; that such persons were instructed to, and will, unless restrained by the court, charge various owners of motor vehicles 50 cents and other sums for the reg-

istration of and certificate of title to their motor vehicles.

It is then alleged that the appointment of such persons as agents of the Highway Commission is wholly without authority of law, and that defendants have no authority to turn over to such agents any property whatever belonging to the state, and that such persons so appointed and designated are without any authority of law whatever to collect from the owners of motor vehicles any sums whatever as auto tag collectors, notaries public, or otherwise. It is further alleged:

"Plaintiff further alleges that great and irreparable injury and damages will result to the citizenship and taxpayers of the state of Oklahoma if said purported agents are permitted to continue with the work as hereinbefore set forth, and that this plaintiff has no other legal and adequate remedy at law."

A restraining order appears to have been granted, though it does not appear in the record.

Defendants appeared, asked, and were granted leave to answer instanter. In their answer they admit the appointment of agents throughout the state to represent and act for the State Highway Department in the collection of the automobile tax and issuance of certificate of title and the collection of the fee provided by law therefor; that such persons are commonly known as tag collectors, but are appointed and designated by defendants as special agents; that as such agents, they are supplied with such blanks and materials, including automobile license tags, as are necessary for the purpose of their appointment; that the appointments are made by way of a written instrument designated "contract," a copy of which, in blank, is attached and made a part of the answer. The material part of the contract reads:

"The State Highway Commission hereby appoints the said _____ as special agent for the State Highway Commission for the purpose of registering motor vehicles and issuing tags for the same within the county of _____, state of Oklahoma, subject to the rules, regulations and instructions given to special agents by the State Highway Commission.

"In consideration of the above appointment, the said party of the second part agrees to comply with and abide by the rules, regulations and instructions given to special agents by the State Highway Commission. Failing to comply with the same, this contract to become null and void and of no effect, otherwise, to be in full force and effect from the date hereof."

Copies of the regulations and instructions given are also attached. It is then alleged:

"That by virtue of the appointment and the laws of the state of Oklahoma the said special agent must and does, without charge, furnish all motor vehicle owners who apply to him with application blanks for certificates of title, duplicate certificates of title, and duplicate registration certificates; also application blanks for yearly registration of motor vehicles, trucks and tractors, and application affidavits for duplicate number plates or licenses. Copies of said application forms are attached hereto and made part hereof and designated as defendants' exhibits D, E, F, G, and H. That upon the filing of properly executed applications and the payment of the license and certificate fees prescribed by law, said special agent under and by virtue of his appointment and the laws of the state of Oklahoma, issues to the applicant a certificate of registration and certificate of title, also a metal license tag. That copies of these instruments are attached hereto and made part hereof, same being marked 'Defendants' Exhibits I and J.' That said certificate of registration and certificate of title are executed and signed by said special agent in such representative capacity. That for such work no charge of any kind is made the applicant by such special agent, and such special agent receives no compensation of any kind or character for such work from the State Highway Department except 25 cents of the $1 fee prescribed by chapter 43, Session Laws of Oklahoma 1925, for the issuance of a certificate of title, said 25 cents being paid the said special agent by the Highway Department under and by virtue of section 16 of said act, sec. 5, chapter 198, Session Laws 1925, and the implied power to compensate; that the special agents appointed on April 14. 1927, as referred to in the petition of plaintiff and all special agents heretofore appointed by the said State Highway Commission, and which are now engaged in aiding and assisting the said State Highway Commissioner, State Highway Department. in the collection of automobile license fees, are necessary for the purpose of aiding and assisting the said State Highway Commission in performing the duty of the collection of said automobile license fees devolved upon said department by the statutes of this state; that said special agents are reasonable in number and same are only appointed when it is necessary for the said State Highway Commission to have aid and assistance at the place where such special agent is to work and represent the said commission."

It is further alleged:

"That the persons appointed as special agents on April 14, 1927, as alleged in the

petition of plaintiff and all other persons who have been appointed and are now working as special agents for the Highway Department, are notaries public duly commissioned as such under the laws of the state of Oklahoma; and as such notaries public are authorized by law to take acknowledgments and charge a fee of 25 cents for each acknowledgment so taken and made before them. * * * That the only fee collected from any source by the person designated and appointed as special agent, aside from the 25 cent fee mentioned and described above, is the fee of 25 cents for each acknowledgment taken and made before such person, and such charge is made by such person in his or her capacity as notary public as by law provided; that such fees are proper and legal charges against the applicant and any one else who desires to employ such person to act as notary public for and on his behalf in regard to taking acknowledgments."

Plaintiff demurred to the answer. The demurrer was overruled, except as to that part relative to the agents being permitted to retain 25 cents out of the fee of $1 charged under the provision of chapter 43, Session Laws of 1925, for the issuance of a certificate of title. Plaintiff elected to stand upon his demurrer and refused to plead further. Defendants elected to stand upon their answer and refused to plead further. Thereupon, plaintiff requested an injunction upon the facts set forth and specifically admitted in the answer.

The temporary restraining order was then dissolved, except as to that part of the practice sought to be enjoined which permitted the special agents appointed by defendants to retain 25 cents out of the $1 fee collected for the issuance of certificate of title; as to such charge, a permanent injunction was granted, but all other relief was denied. From this judgment and decree, plaintiff appeals.

Since the appeal was perfected, the present Highway Commission, composed of L. H. Wentz, L. C. Hutson, S. C. Boswell, has been substituted as defendants in error.

Both parties concede the correctness of that part of the decree which grants the injunction enjoining the practice permitted by defendants of the special agents retaining the 25 cents out of the fee collected for issuing certificate of title.

The petition in error contains six assignments, but they present but one question: Did the court err in denying the injunction as prayed for by plaintiff upon the pleadings?

We have carefully examined the record and the briefs, and it appears that there are but two questions presented, viz.: The power of the Highway Commission to appoint or designate special agents for the purpose above stated, and the right or authority of such agents, who are also notaries public, to charge and collect from applicants for motor vehicle licenses or certificate of title, a notary's fee where the applications are verified before such notaries.

It does not appear just what injury or detriment plaintiff claims is or will be suffered by him or the owners of motor vehicles, or the state, by the appointment of such special agents. Plaintiff does not allege that he is the owner of a motor vehicle and has been or will be caused any injury, damage, detriment, or inconvenience by the appointment of or conduct of the special agents. He does complain of the acts of the Highway Commission in turning over to such agents the property of the state consisting of supplies, including metal license plates. But does not complain of loss or threatened loss by the state or the taxpayers on account thereof. The answer of defendants, and its truth, as admitted by the demurrer and motion for judgment upon the pleadings, shows that each special agent is required to give a good and sufficient bond in a penal sum commensurate with the value of the property placed in his hands and the amount of money to be taken in and handled by him by virtue of his appointment. The principal argument of plaintiff is that the Highway Commission is without authority of law to appoint such special agents, and that he, therefore, for himself and several thousand motor vehicle owners, wants the appointment enjoined, lest the Highway Commission might in the future, in case its personnel should change and less scrupulous men become members thereof, decide to compensate such agents for their services out of the highway construction and maintenance fund under their control. It is not contended that this is now being done or about to be done.

Both parties review at length the history of the legislation of this state relative to the creation and functions of the State Highway Department.

The first license tax on automobiles was levied by chapter 105, Session Laws 1910-11. This act created the State Highway Department and provided for the appointment of a State Highway Commissioner. His duties were limited almost entirely to matters relating to plans for the building and maintenance of improved public high-

ways and collecting the $1 license fee provided for in section 7 of the act, and gathering statistics relative to the cost of building and maintenance of improved highways.

By article 4, chap. 173, Session Laws 1915, the amount of license tax was increased. The duty of collecting the tax was still placed with the Highway Department. All owners of motor vehicles were required to verify their applications for license, and file same, by mail or otherwise, in the office of the Department of Highways, **or with its agent.** This is the first mention in the law of an agent of the Highway Department and the first provision for filing with such agent the application for license. No specific authority was provided for the appointment or designation of such agents, nor were their duties specifically defined. No power or authority was conferred upon the Highway Department to maintain or construct, or contract for the maintenance or construction of highways.

The registration law was again amended by chapter 290, Session Laws 1919. The duty of collecting the license tax remained with the Highway Department. The owner was required to sign and verify the application for license in duplicate, and file same by mail or otherwise with the Highway Department, **or its agent.** Again an agent of the department was authorized to receive the application, and no specific authority was given to appoint such agent. No authority was conferred upon the Highway Department by this act to maintain or construct highways.

By chapter 211, Session Laws 1919, the position of certain clerks. bookkeepers, enforcement officers, certificate writers, and card writers were created, and it was provided that no fee or charge should be made for swearing to applications or affidavits. Certificates of registration could, at that time, be issued only out of the office of the Department of Highways. No agent could issue such certificates.

By chapter 48, Session Laws 1923-24, a State Highway Commission of three members was created, and the Department of Highways was, for the first time, given power and authority to construct and maintain highways, and the state highway construction and maintenance fund was created.

Certificates of title were first provided for by chapter 221, Session Laws 1923. This certificate was required to be furnished by the vendor of new vehicles, and was called an abstract. Before application for renewal of license, the owner was required to exhibit the abstract, or certificate of title, to the Highway Department or to the **clerk** designated **by the department.** In case the vehicle had no title, due to the fact that the act was not in force at the time of the original purchase thereof, the owner was required to present two witnesses to the Highway Department, **or said clerk designated by the department,** who were required to write across the first sheet of the abstract the fact that they knew the party to be the owner of the vehicle. The title sheet to be made out in the presence of the said witnesses. If the Highway Department was not then authorized to appoint or designate some **person as clerk,** other than the regular clerks in the office of the department before whom the owner could produce such witnesses, then every owner of a motor vehicle which had been sold by a dealer prior to the enactment of that law would have been required to appear personally before the department with his two witnesses in order to renew his license. This would have required many thousands of motor vehicle owners at great expense to travel many hundreds of miles to the State Capitol with their respective witnesses. Such was certainly not the intention of the Legislature. It must have intended the department should have power to designate clerks as agents throughout the state before whom the witnesses might appear. Otherwise, with approximately 200,000 automobiles then in the state, some 600,000 persons would have been required to appear in person before the department in Oklahoma City, in order that the owners of the motor vehicles then in use could renew the registration.

By chapter 43, Session Laws 1925, official certificates of title were first provided for, and the duty of issuing same was placed upon the Highway Department.

By subdivision "h" of section 1 of the act, the term "authorized agent or agents," as applied to that act, was defined as "any clerk of this state designated by the Highway Commission to act as said agent for the Highway Commission." By this act no certificate of registration or number plate can be issued or furnished "by the Highway Commission or its authorized agent," unless the applicant shall at the same time make application for and be granted a certificate of title, or present satisfactory evidence that such certificate covering such vehicle has been previously issued to the applicant. Section 2 of the act provides in part:

"The Highway Commission, or its authorized agent, shall use reasonable diligence in ascertaining whether the facts stated in such

application are true, and if satisfied that the applicant is the lawful owner of such motor vehicle, or otherwise entitled to have the same registered in his name, s'hall thereupon issue an appropriate certificate of title, in triplicate over his signature and code word authenticated by an official seal. The original copy shall be delivered to the applicant, a copy to be mailed forthwith to the Highway Commission, and the third copy to be retained by the issuing officer."

This act certainly contemplated the appointment or designation of persons as agents of the department other than clerks at the State Capitol, otherwise there would be no occasion for the provision in section 2 for mailing a copy of the certificate to the Highway Commission. It will be observed that either the Highway Commission or its agent is given authority to issue the certificate. and where it is issued by such agent, he is required to retain a copy thereof.

The act provides for a fee of $1 for the issuance of the certificate of title, which charge is in addition to the charge for registration. It was the retention by the agent of 25 cents out of each $1 collected for the issuance of the certificate of title which the trial court held to be without authority of law, and the allowance of which we think was very properly enjoined.

It will be s'een from the foregoing that three distinct duties are now imposed by law upon the State Highway Commission, viz.: Collection of the license or registration tax on motor vehicles; construction and maintenance of state highways; and issuance of certificates of title to motor vehicles and keeping proper record and index thereof, so as to make it possible at all times to trace the ownership of and title to each registered motor vehicle.

It is contended by plaintiff that only chapter 48, Session Laws 1923-24, need be considered in determining the power of the commission to appoint or designate such special agents. Plaintiff contends that the state highway construction and maintenance fund is appropriated primarily for the construction of roads. That the collection of license fees and taxes and the issuance of certificates of title are entirely independent functions visited upon the Highway Commission rather than upon some other state department; that the clerks and agents of the Commission for registration and clerical purposes are created by existing legislative enactment, and that the Commission is limited to those appointments. for such purposes, as the legislative authority may prescribe, rather than authorized as a "job creating agency."

With this contention, we are inclined to agree, in so far as it applies to appointment of clerks, agents, and other employees, to be paid for their services from the funds of the state. It is well settled in this state that one who demands payment of any claim out of the funds of the state or any subdivision thereof must show some statute authorizing it, or that it arises from some contract, express or implied, which finds authority of law. Board of Com'rs of Washita County v. Brett. 32 Okla. 853, 124 Pac. 57.

Plaintiff cites many cases upholding this rule. In fact, all or nearly all of the cases cited by plaintiff are where the public funds were sought to be used for the payment of claims of persons seeking payment where such payment was not authorized by law. But we are dealing with a different situation here, since the payment of these special agents by the Highway Commission is not involved in this appeal.

By section 1, chapter 173, Session Laws 1915, supra, by section 1, chapter 290, Session Laws 1919, supra, the application for registration could be presented to the Commission or its "authorized agent," and again by section 2, chapter 43, Session Laws 1925, the Highway Commission "or its authorized agent" is empowered to issue certificates of title.

We do not think that it is necessary that the legislation declare in express words that the Commission be authorized to appoint such special agents. The use of any language which shows the legislative intent is sufficient. Childs v. State, 4 Okla. Cr. 474, 113 Pac. 545. In Ryan v. Riley, State Controller (Cal. App.) 223 Pac. 1027, it was held:

"No particular language is necessary for the creation of an office; it being sufficient if the intent of the Legislature is so manifested by the language used."

So that when the Legislature of this state in the several acts provided that certain acts might be done by the Commission or its duly authorized agent, it must of necessity be inferred that the Commission was authorized to designate such agents. It was certainly intended by the Legislature that the State Highway Department have agents. If it was to have agents for this special purpose, it must of necessity have the power to appoint or designate them.

We conclude, therefore, that the Commission under existing law has full power to appoint and designate special agents to assist it in collecting the motor vehicle license tax and issuing certificates of title.

It is insisted, however, that the agents appointed are not clerks of the state, and that their appointments, for that reason, are void. Where in subdivision (h) of section 1, chap. 43, Session Laws 1925, supra, the term "authorized agent or agents" shall refer to any clerk of this state designated by the Highway Commission to act as such agent, it clearly refers to the clerks theretofore authorized to be designated by chapter 231, Session Laws 1923. As heretofore pointed out, it could not have been intended that such clerk should be one of the clerks at the office of the Highway Department at the State Capitol. It certainly was not intended to mean any regular county clerk, court clerk, or clerk of any municipality of the state. If so, it would have been necessary to designate with certainty which clerk was meant, whether county clerk, court clerk, or other clerk, and to make such work a part of the duty of such clerk. It means simply such clerks or assistants for the State Highway Commission residing within the state as may be designated by the Highway Commission.

The next proposition is that such special agents are not authorized to charge and collect from applicants for motor vehicle registration or for certificates of title any fee for administering the oath to the applicant.

The special agents, as such, are not clothed with authority to administer oaths. In order that they may legally administer the oath required of applicants, it is necessary that they secure a commission as a notary public. It is in this capacity alone that they are authorized to administer the necessary oath to the applicant. They are required under the law and by regulations of the department to furnish to each applicant the necessary blanks free of charge. The applicant is then free to go to any notary or other officer authorized to administer the oath whom he may choose. If he chooses to employ the notary public who happens to be the special agent of the Highway Commission, that would appear to be clearly within his right. He could, if he wished to avoid payment of the notary's fee, fill out the application and go in person to the office of the Highway Department and there have the oath administered, free of charge. Neither the plaintiff, if he is the owner of a motor vehicle, nor any one of the several hundred thousand motor vehicle owners whom plaintiff seeks to be relieved of this charge is compelled to pay the same. This service will be freely rendered by the Commission at the office thereof in the State Capitol. But if the applicant chooses, rather

than make the journey of several hundred miles in some instances, to employ the notary public who happens to be the special agent of the Highway Commission, or any other officer who may be convenient, we see no impropriety in such notary or other officer charging and collecting the fee of 25 cents provided by law therefor. It is asserted that by exacting this fee some six hundred thousand motor vehicle owners of the state are wrongfully required to pay an aggregate of several hundred thousand dollars annually in notary fees. This may be true, but what would be the extra expense if each motor vehicle owner were required to appear in person at the office of the Commission and verify his or her application for registration? Or how would they be benefited by being required to go to other notaries public or other officers to verify their applications? The same charge would likely be made, and certainly so if the oath were administered by any county or court clerk, since they are required by law to collect the fee and turn it in to the county treasury. In no way can we see where the vast number of motor vehicle owners of the state would or could be benefited by the injunction prayed for. We can see where it might work to their detriment and greater expense.

We are of the opinion that the State Highway Commission has the authority under existing law to appoint or designate special agents throughout the state to assist them in collecting the motor vehicle tax and registering motor vehicles and issuing the certificate of title required by law. That such agents, who are also notaries public, may charge and collect the fees allowed by law to notaries public for administering the oaths required by law to be administered to applicants for registration and certificates of title.

The judgment of the trial court should be, and is hereby, affirmed.

BENNETT, HERR, HALL (concurring in conclusion), and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.