Dear Mr. Daxon,
The Attorney General is in receipt of your request for an opinion in which you ask, in effect, the following questions:
1. What legal obligations are imposed on motor license agents?
 2. When, if ever, may motor license agents lease or sell their ownproperty for use in the tag agency? If such transactions are permissible,may a motor license agent "earn money" in addition to the $22,000 maximumallowed by 47 O.S. 22.30(1) (1978)?
 3. Do the nepotism statutes prohibit the appointment of third degreerelatives of members of the Tax Commission as motor license agents?
 I.
The key to defining the legal obligations of motor license agents lies in the public nature of that position.
Motor license agents are basically tax collectors, operating under the direct control of the Oklahoma Tax Commission. See Riggs v. Leininger,137 Okla. 138, 278 P. 344 (1929). The position is statutorily created and both its duties and compensation are fixed by statute, 47 O.S. 22.21, 47 O.S. 22.22, and 47 O.S. 22.30(1) (1978). The records and financial statements of these agents are open to public inspection, 47 O.S. 22.30(h) and 47 O.S. 22.30(n) (1978). Furthermore, they are required to remain open at certain hours convenient to the public, 47 O.S. 22.30(1-2) (1978). In addition, the agent must post an official faithful performance bond, 47 O.S. 22.22 (1978) and 47 O.S. 22.30(1) (1978), and while they do not take an oath of office, they are required to sign the loyalty oath taken by State employees. Finally, these agents are liable for misfeasance or nonfeasance in performing their official duties, 47 O.S. 22.30(c) (1978) and 47 O.S. 22.30(h) (1978).
As official arms of the Tax Commission, then, motor license agents may be said to exercise a public trust. Because they are authorized to collect money from the public, such agents stand in a relationship of trust and confidence to the public they serve. In other words, the obligations imposed on such agents are fiduciary in nature. This high standard derives, not from a formal trust arrangement, but rather, from the public nature of the motor license agent's position.
 II.
In order to answer your second question — when, if ever, may motor license agents lease or sell their own property for use in the tag agency — one must first understand the system provided by the Legislature for handling the fiscal matters of tag agencies, found primarily in 47 O.S. 22.30(n) (1978). Each motor license agent submits a proposed annual budget of expenses to the Tax Commission for approval or disapproval. The Commission has "the power to require any changes it deems necessary in the operation of those motor license agents." Next, the Commission prints "a detailed list of all allowable operating expenses and disbursements to be allowed such motor license agents." In addition to these operating expenses, the list also includes the compensation of the motor license agent. The agents do not pay for the operation of the tag agency out of their own pockets. Rather, their compensation is a personal salary, the other operating expenses being separate, budgeted items which the Commission either allows or disallows. This personal compensation is retained by the agents out of the fees they collect, and "the percentage of funds to be retained . . . shall be determined by the Commission each year," 47 O.S. 22.30(h) (1978). In no event may the agent's retained compensation exceed $22,000, 47 O.S. 22.30(1) (1978). Any excess funds must be remitted twice a month to the Tax Commission along with the required report, 47 O.S. 22.30(h) (1978).
Turning to the first part of your question, the Attorney General cannot conclude that the Legislature intended to completely prohibit motor license agents from selling or leasing their property for use in the tag agency. Although the statute contains no express authority permitting such transactions, neither does it contain any express prohibition against them. In fact, certain statutory language indicates that motor license agents may hold an interest in the property used in the tag agency, implying that the Legislature contemplated such transactions. Title 47 O.S. 22.30(n) (1978) provides:
 "The Commission shall establish a beginning inventory and maintain records of all real and personal property leased or owned by each motor license agent and shall annually update its records as to any interest, whether partial or whole, held by the motor license agent in such real and personal property. Upon the appointment of a successor agent, the Commission shall have the power to provide for the equitable settlement of any issue arising from any partial interests involved in such real and personal property."
Furthermore, the Legislature designated motor license agents as "self-employed independent contractors," 47 O.S. 22.30(n) (1978).
However, motor license agents are by no means given a free reign in acquiring property for use in the tag agency, either from themselves or from third parties. On the contrary, every such transaction is submitted to the close scrutiny of the Tax Commission as discussed above, 47 O.S. 22.30(n) (1978). The agent's proposed annual budget, which includes the expenses of real or personal property needed for operation, is subject to the Commission's approval or disapproval. In addition to the power to disallow expenses, the Commission has the "power to require any changes it deems necessary in the operation of those motor license agents," 47 O.S. 22.30(n) (1978). Also, the Oklahoma Tax Commission is authorized to promulgate rules and regulations pursuant to 47 O.S. 22.21 (1978). Moreover, motor license agents are audited at least annually by the Commission, as well as by the State Auditor and Inspector, 47 O.S. 22.30(n) (1978). The Commission may remove motor license agents at will, 47 O.S. 22.22 (1978).
Also in 47 O.S. 22.30(n) (1978), the Legislature imposed yet another restriction on those agents whose compensation is the maximum amount by requiring that these agents:
 "shall utilize the facilities of the Central Purchasing Office to make any purchase or lease that is available in the quantities desired and all such purchases or leases shall be made through that office unless the motor license agent can make such purchase or lease at a less cost from some other source."
Not only are such transactions subject to the Commission's scrutiny, they are also subject to the scrutiny of the public. The final paragraph of 47 O.S. 22.30(n) (1978) provides:
 "Any and all records, files, books or otherwise of a motor license agent relating to the operation of the motor license agency shall be public record which shall be open to public inspection at reasonable times, regardless of their location."
Thus, restrictions on motor license agents who sell or lease their property for use in the agency are built into the system of handling their fiscal matters. While the statute does not preclude motor license agents from selling or leasing their own property for use in the tag agency, they are prevented from doing so at an unfair price. Any abuse could be detected by either the Oklahoma Tax Commission or the State Auditor and Inspector during the budgeting and auditing processes as well as by public inspection. Moreover, the Commission is in a position to remedy any such abuse through its power to disallow expenses, its power to require changes in the agent's operation, its power to promulgate rules and regulations, and its power to remove agents at will.
The request submitted also enquires whether motor license agents may "earn money in addition to the $22,000 maximum" by such sale or lease. Again, one must consider the system devised for handling the tag agency's finances. The $22,000 maximum pertains strictly to the compensation retained by the agents out of the fees they collect, 47 O.S. 22.30(1) (1978). This compensation is the agent's personal compensation and is distinct from the operating expenses. These expenses, which would include the lease or sale of property used in the tag agency, are separate, budgeted items, subject as always to the Commission's scrutiny and to public inspection. The $22,000 maximum, on the other hand, applies only to the compensation which motor license agents are entitled to in the performance of their official duties. Selling or leasing their own property for use in the agency are not part of these duties. Thus, any income incidentally realized from such transactions is not earned compensation and the $22,000 maximum, therefore, has no application to these dealings between the agents and the Tax Commission during the budgeting and auditing process.
In conclusion, it is the opinion of the Attorney General that all transactions concerning property for use in the tag agency, regardless of source, must be made only after strict adherence to the restrictions contained in 47 O.S. 22.30(n) (1978).
 III.
Your third question asks whether the Oklahoma nepotism statutes, 21 O.S. 481 through 21 O.S. 487 (1971), apply to the appointment of motor license agents.
Title 21 O.S. 481 (1971) provides:
 "It shall be unlawful for any executive, legislative, ministerial or judicial officer to appoint or vote for the appointment of any person related to him by affinity or consanguinity within the third degree, to any clerkship, office, position, employment or duty in any department of the State, district, county, city or municipal government of which such executive, legislative, ministerial or judicial officer is a member, when the salary, wages, pay or compensation of such appointee is to be paid out of the public funds or fees of such office. Provided, however, that for the purposes of this chapter, a divorce of a husband and wife shall terminate all relationship, by affinity that existed by reason of the marriage regardless of whether the marriage has resulted in issue who are still living."
Title 21 O.S. 482 (1971) provides:
 "It shall be unlawful for any such executive, legislative, ministerial or judicial officer mentioned in the preceding section, to draw or authorize the drawing of any warrant or authority for the payment out of any public fund, of the salary, wages, pay or compensation of any such ineligible person, and it shall be unlawful for any executive, legislative, ministerial or judicial officer to pay out of any public funds in his custody or under his control the salary, wages, pay or compensation of any such ineligible person."
Accordingly, a determination of whether the appointment/payment of motor license agents comes within the ambit of these statutes depends on three issues: (1) Are members of the Oklahoma Tax Commission, who appoint the agents pursuant to 47 O.S. 22.22 (1978), officers affected; (2) Is the position of motor license agent "any clerkship, office, position, employment or duty in the department . . . of government of which . . . the officer is a member"; and (3) Is "the salary, wages, pay or compensation of such appointee to be paid out of the public funds or fees of such office." The answer to all three questions is in the affirmative.
Title 21 O.S. 487 (1971), specifies the "officers affected":
 "Under the designation executive, legislative, ministerial or judicial officer as mentioned herein are included the Governor, Lieutenant Governor, Speaker of the House of Representatives, Corporation Commissioners, all the heads of the departments of the State Government . . . numerous other officers listed . . . and all other officials of the State, district, county, cities or other municipal subdivisions of the State." (Emphasis added)
Clearly, the Legislature intended the list to be broad. Unquestionably, members of the Tax Commission fall within the phrase "all other officials of the State." Likewise, the scope of positions affected is broad, ranging from "any clerkship, office, position, employment or duty in any department of . . . government of which such . . . officer is a member." The position of motor license agent meets this provision because it is a position or duty under the auspices of the Tax Commission, the department of government of which the appointers are members, 47 O.S. 22.21 and 47 O.S. 22.22 (1978). Finally, the agents' compensation is "paid out of the public funds or fees of such office" since they retain their compensation out of the licensing and registration fees they collect from the public on behalf of the Tax Commission.
Therefore, the Attorney General concludes that 21 O.S. 481 (1971), prohibits the appointment of third degree relatives of members of the Tax Commission as motor license agents and 21 O.S. 482 (1971), prohibits the payment of such ineligible relatives as motor license agents.
In summary, it is the official opinion of the Attorney Generalthat:
 1. Since motor license agents stand in a relationship of trust andconfidence to the public they serve, their obligations are fiduciary innature.
 2. All transactions for acquiring property for use in the tag agencymust be made only after close scrutiny by the Tax Commission inaccordance with 47 O.S. 22.30(n) (1978), including the provision forpublic inspection.
 3. The nepotism laws, 21 O.S. 481 and 21 O.S. 482 (1971), prohibit theappointment or payment as motor license agents of any third degreerelative of members of the Tax Commission.
JAN ERIC CARTWRIGHT, ATTORNEY GENERAL OF OKLAHOMA
STEPHEN F. SHANBOUR, ASSISTANT ATTORNEY GENERAL