(No. 5827.  December 9, 1931.)

M. G. McCONNEL, Adjutant General of the State of Idaho, Plaintiff, v. E. G. GALLET, State Auditor of the State of Idaho, Defendant.

[6 Pac. (2d) 143.]

Fred J. Babcock, Attorney General, and Sidman I. Barber, Assistant Attorney General, for Plaintiff.

Frawley & Barnes, for Defendant.

LEE, C. J.—In August, 1931, because of extensive and uncontrolled forest fires raging through the counties of Boise, Gem, Valley and Idaho, coupled with threats of incendiarism and pillage and the inability of the civil authorities adequately to protect the lives and property of citizens and prevent imminent riots and breaches of the peace, Governor C. Ben Ross, by virtue of the constitutional and statutory authority vested in him, declared said area in a state of insurrection, proclaimed martial law therein and called into active field service certain units of the Idaho National Guard, including Troop E, 116th Cavalry. The troop served eighteen days.

Pursuant to the provisions of Chapter 261 of the 1927 Session Laws, the petitioner herein, M. G. McConnel, as Adjutant General, certified to the defendant, E. G. Gallet, State Auditor, a duly authenticated claim in the sum of $1292.63, representing the amount of compensation by law due and owing the members of said troop. The auditor delivered the claim to the state board of examiners, attaching thereto his certificate that there were no funds in the treasury out of which said claim could lawfully be paid. The board regularly allowed the claim and returned it to the auditor for the issuance of his warrant therefor. The auditor refused to draw the warrant. Petitioner thereupon secured

from this court an alternative writ of mandate. In his return, the auditor admitted the facts alleged in the petition, but insisted that he was prohibited by law from drawing such warrant, alleging that the only source of payment was a continuous appropriation known as the ''Adjutant General's Contingent Fund,'' in which at the time there were not sufficient funds to pay the claim.

In support of his position, he relied upon a long line of decisions of this court, culminating with that of *Herrick v. Gallet,* 35 Ida. 13, 204 Pac. 477, announcing that ''Plaintiff has no right to draw a warrant upon the treasurer for the payment of his claim unless it appears that there is money in the treasury duly appropriated for that purpose.'' Underlying these decisions, are section 13 of article 7 of the state Constitution, prohibiting the drawing of money from the treasury except in pursuance of appropriations made by law, par. 14 of C. S., sec. 141, authorizing the auditor to draw warrants on the treasurer for the payment of moneys directed by law to be paid out of the treasury and providing that no warrant must be drawn unless authorized by law and that it must be drawn upon the fund out of which it is payable, C. S., sec. 151, directing that, in cases of unliquidated accounts and claims, the adjustment and payment of which are not provided for by law, no warrants must be drawn by the auditor or paid by the treasurer, until appropriation is made by law for that purpose, nor must the whole amount drawn for and paid for any purpose or under any one appropriation ever exceed the amount appropriated, C. S., sec. 239, requiring the auditor, on all accounts submitted to the board of examiners, to certify that there are funds in the state treasury out of which the same may lawfully be paid, and C. S., sec. 242, prohibiting the board from examining, considering or acting upon any claim not so certified.

A careful examination of these cases discloses that they had to do with instances where either no specific sum had been appropriated, or where, if it had been, the fund had been so depleted as to render it insufficient to pay the claim submitted. None of them involved continuing appropria-

tions. With respect to such latter, the auditor at a particular time might be able to certify that the fund was insufficient to satisfy the demand upon it but he could not with certainty certify that sufficient accumulations would not accrue in the future. It is admitted that the Adjutant General's Contingent Fund is a continuing appropriation. Chapter 261, 1927 Session Laws, creating it, after specifying certain sources of revenue, provided that ''all moneys at any time in the Adjutant General's Contingent Fund are hereby appropriated for the purpose of defraying the expenses, debts and costs incurred in carrying out the provisions and purposes of this Act. And all claims against said fund shall be examined by the Adjutant General and certified to the state auditor who shall, upon the approval of the said Board of Examiners, draw his warrant against said Adjutant General's Contingent Fund for all bills and claims so allowed by said Adjutant General.''

It will be noticed that no sum was definitely fixed by the appropriation. An appropriation within the meaning of sec. 13, article 7, has been defined as ''authority from the legislature expressly given in legal form to the proper officers, to pay from the public moneys a specified sum, and no more, for a specified purpose, and no other.'' (*Herrick v. Gallet, supra.*) However, from an examination of the authorities it appears that this element of specificness is necessary only when the appropriation is made payable from the general fund and is required solely as a protection against unlimited withdrawals from such fund under authority of a general appropriation. When, as here, the appropriation is made payable from a special fund, it is not necessary to appropriate a specific sum. (*Ryan v. Riley,* 65 Cal. App. 181, 223 Pac. 1027; *Humbert v. Dunn,* 84 Cal. 57, 24 Pac. 111; *Ristine v. State,* 20 Ind. 328.) The act is clearly an attempt to make a continuing appropriation of all money that at any time may be in the Adjutant General's Contingent Fund; and the authorities are unanimous that, in the absence of a constitutional inhibition against continuing appropriations, they are valid. We have no such inhibition.

■ Having determined that there was in fact an appropriation, the next question is: Was the expenditure for which petitioner's claim was presented authorized by law? Section 4 of article 4 of the Constitution empowers the Governor "to call out the militia to execute the laws, to suppress insurrection or to repel invasion." Section 5, chap. 261 of the 1927 Session Laws, following the constitutional investment, declares that, in case of disaster, invasion, riot, breach of the peace or imminent danger thereof, he shall have power to order into active service the National Guard or any portion thereof and the unorganized militia, or both, as he may deem proper. Such power carries with it by implication the power to incur expenses necessarily incident to the operations of the troops called out. The Act, itself, fixed their pay and directs the Adjutant General to pay them when they are to be paid from state funds. When he has allowed the claims and certified them down to the auditor, it but remains for the board to act upon them and, if approved, for the auditor to draw his warrant upon the Contingent Fund forthwith.

It may be argued that, when it made its appropriation, the legislature could not have contemplated how much money would accrue to the fund or that the same might be called upon to defray unforeseen expense far exceeding the possible revenues appropriated. Be that as it may, one thing is sure. The legislature authorized a certain thing to be done; it ordered the thing to be paid for out of a fund created for that purpose. If, unhaply, it did not provide enough to carry out its mandate, having created a continuing fund, it can increase that fund as required and will undoubtedly do so. The drawing of the warrant by the auditor withdraws not a cent from the treasury. The warrant is nothing but an evidence of debt that may or may not be honored by the treasurer, certainly not, if there is insufficient money in the Contingent Fund to pay it.

■ There is no merit in the contention that, unless the auditor certifies that there are moneys in the fund to pay it, the board, under C. S., sec. 242, is prohibited from approving the claim. Such a prohibition would be not only non-

sensical but in direct contravention of sec. 18, article 4 of the Constitution, declaring that no claim shall be passed upon by the legislature without having first been considered and acted upon by said board. If the letter of the statute is to be upheld, we have this situation. No money in the treasury; a legitimate claim presented for the board's approval; the board forced to mark time, and the legislature perpetually enjoined from replenishing the treasury until the board shall send in an approval by statute forever forestalled. Whether it is to laugh or to weep, depends upon the viewpoint of either the sovereign served and held scathless or the faithful servitor holding an empty sack, after doing what his master bade him do and promised to pay him for. It is inconceivable that the sovereign state of Idaho should game with loaded dice and dismiss its citizen creditors with the smug ultimatum, "Heads, I win; Tails, you lose."

Writ granted, requiring the defendant to draw his warrant, as prayed for, upon the Adjutant General's Contingent Fund.

Budge, Varian and McNaughton, JJ., concur.

Givens, J., concurs in the result.