451 P.2d 542

R. D. LEONARDSON, Virgil King, Emmett Bennett, John H. Pino, Phil E. Batt, and Marion Davidson, Plaintiffs-Appellants,

v.

Marjorie MOON, Treasurer of the State of Idaho; Marjorie C. Jonasson, Treasurer of the County of Ada; Deloy Giles, Treasurer of the County of Bannock; Clarence Planting, Ada County Auditor; Emmette Spraker, Bannock County Auditor, all State of Idaho, Defendants-Respondents.

No. 10376.

Supreme Court of Idaho.

March 5, 1969.

Rehearing Denied March 10, 1969.

Samuel D. Eismann, Caldwell, for appellants.

Robert M. Robson, Atty. Gen., and Thomas C. Frost, Asst. Atty. Gen., Wilfrid W. Longeteig, former Deputy Pros. Atty., for Ada County, Boise, for respondents.

Iver J. Longeteig, III, of Hawley, Troxell, Ennis & Hawley, Boise, amici curiae Idaho Retailers Ass'n et al.

SPEAR, Justice.

This is an action instituted by the appellants, seeking to have declared unconstitutional certain portions of Chapter 116, 1967 Session Laws, beginning at page 229. This was H.B. No. 243 of the Thirty-Ninth Session of the Idaho Legislature, and was commonly referred to as the "Inventory Tax Phase-out Law." After a trial on the merits in the lower court, resulting in judgment for the defendants-respondents, the plaintiffs-appellants have appealed. We conclude the judgment of the lower court should be affirmed.

As findings of fact, the trial court adopted the stipulations of fact submitted by the parties to that court, which facts may be summarized as follows:

1. That each of the parties appellants were and are citizens of the United States, residents of the State of Idaho and residents of their respective counties;

2. That each of the parties appellants was a taxpayer of the State of Idaho, all of them paying sales and use taxes, income taxes, real and personal property taxes to the county, city and other taxing district in which he resides, and excise taxes levied on various products by the State of Idaho, and that others of the plaintiffs-appellants additionally paid personal property taxes on property used in his trade or business;

3. That each of the parties respondents held their respective official positions, and action was brought against them in such positions because of their duties to make distribution from the "sales tax fund" as provided in H.B. No. 243;

4. That the effect of H.B. No. 243 will be to exempt the personal property set forth ("business inventory") from ad. valorem taxation at an increasing proportion of 25% each year from 1968 through 1971 until the exemption becomes complete, resulting in a loss of revenue to local units of government and a replacement of such local revenue loss by the use of an increasing proportion at the rate of 5% of the total sales and use tax revenues collected each year until a total of 20% of the sales and use tax revenue collected by the State will be paid to the local governments in 1971;

5. That there are sheep in Idaho held for the production of wool, dairy cows in Idaho held for the production of milk, breeding cattle held for the production of calves, horses held for the purpose of pulling plows, wagons, etc., and horses held for rental for riding purposes; that there are also sheep, cattle, and horses in Idaho which are held for sale;

6. That the tax commission has for many years scrutinized local mill levies to determine if they comply with the statutory limitations or purporses for which such levies may be made;

7. That the exemption of certain items defined as "business inventory" from taxation by H.B. No. 243 benefits the economic welfare of the State of Idaho.

The parties also stipulated into the record some statistical exhibits as follows:

Exhibit "A": *"Percent average amount of taxes charged—business inventory—by county"* shows the percentage of sales tax fund going to each county based upon the average amount of taxes charged on inventories within the county limits.

Exhibit "B": *"Summary (average amount and per cent of tax charges on business inventory)."* This exhibit identifies and shows the percentage that each taxing entity within the respective counties will receive of the sales tax funds which will be distributed to that entity's county pursuant to H.B. No. 243, if no other taxing entities are added, if none is discontinued, and if no changes are made in the percentage figures.

Exhibit "C": *"Certificate of county levies for year 1967"*—This exhibit shows the amount of mill levy made by the counties, cities and other taxing districts sharing in the distribution under [I.C.] 63-3638(G) [g] and (F) [f] for the particular purposes

authorized by the Code. The counties' and cities' levy for police, public buildings, welfare, etc., is included under the levy for general fund.

It must be noted that the foregoing exhibits A, B and C are documents relating to all forty-four counties in the State of Idaho and of various taxing districts therein.

It was further stipulated by the parties that selected city and county ordinances and annual financial reports were to be admitted as part of the record and identified as exhibits A–1, B–1 and C–1 and D through W. It was additionally stipulated that those documents "are genuine, relevant material and admissible for all purposes in the trial of this matter." [Ostensibly for the purpose of showing the nature and amount of disbursements by the various bodies indicated.]

The parties also stipulated into the record Exhibit X, consisting of certain statistical data concerning the forty-four counties of the State of Idaho, and in substance being a table of the relationship between population and the amounts and percentages, per county and per person, of the sales tax distribution which will go to the counties.

The legal issues upon which this cause was submitted to the trial court are as follows:

1. Whether or not H.B. No. 243 is invalid because it unlawfully permits disbursement of State monies for local purposes contrary to the provisions of Article VII, section 6 of the Idaho Constitution.

2. That H.B. No. 243 is invalid because it is an unlawful delegation of legislative power to make appropriations of state funds. Appellants' principal objection is that the particular purposes to be served or particular objects to be obtained by means of the appropriation must be more specifically stated than is done in H.B. No. 243. It is respondents' contention that the terms of H.B. No. 243 are sufficiently precise to meet every requirement of Article VII, section 13 of the Idaho Constitution,

as previously interpreted by the decisions of the Idaho Supreme Court.

3. That H.B. No. 243 embraces more than one subject and therefore violates Article III, section 16 of the Idaho Constitution. This contention was abandoned by appellants in their reply brief before this court and therefore no discussion thereon is necessary.

4. That the exemption under H.B. No. 243 of all personal property consisting of living organisms [i. e., "all livestock, furbearing animals, fish, fowl and bees."] from ad valorem taxation denies the appellants equal protection by invidiously discriminating against them without rational justification. It is respondents' contention that the act does not unconstitutionally discriminate against appellants as owners of inanimate means of production because such property, i. e., livestock, fish, etc., constitutes a different and separate class of property which the legislature has plenary authority to exempt.

5. That H.B. No. 243 violates Article VIII, section 2 of the Idaho Constitution because it loans the credit of the State to municipalities. This contention was abandoned by appellants in their brief submitted to this court accompanying their Application for Temporary Restraining Order and therefore will not be considered or commented upon.

6. That H.B. No. 243 violates Article III, section 19, Article XII, section 2 and Article XVIII, sections 1 and 5, because it destroys, in part, the system of county government envisioned by the Idaho Constitution. Respondents deny this contention, responding that the act has general application to all counties and other taxing entities and that it in no way attempts to accomplish an encroachment upon the political integrity of the county or municipal system envisioned by the framers of the constitution.

7. That H.B. No. 243 violates Article IV, section 11 of the Idaho Constitution, because the bill attempts to circumvent the power of the Governor of the State of

Idaho to disapprove the items in appropriation bills. This contention is merely controverted by respondents.

On the date set for trial of this cause appellants introduced the issue of whether or not the formula adopted by the legislature was arbitrary and capricious to such an extent that the act should be struck down. The court overruled respondents' objection and determined that it would hear all the issues attendant with the cause and so this issue was in fact tried in the trial court and is now in issue before this court.

After trial on its merits the trial court made findings of fact by adopting the facts as stipulated by the parties and exhibits stipulated as hereinbefore pointed out. The trial court then entered the following conclusions of law:

## "I.

"It is presumed that all statutes are constitutional and that a statute will not be invalidated unless the party challenging the same clearly shows that it is offensive to either the state or federal constitution.

## "II.

"The Court will not decide purely political questions or matters of legislative policy.

## "III.

"The legislature has plenary power in legislative matters, except as such power may be inhibited by the constitution.

## "IV.

"Unless clearly restrained by the constitution, a legislative act is valid.

## "V.

"The prohibitions of Article 7, Section 6 of the Idaho Constitution are limited to ad valorem taxes or ad valorem tax funds.

## "VI.

"The legislature of the State of Idaho may pass an excise tax for the benefit of counties or municipalities.

## "VII.

"The sales tax fund created by Section 63–3638(f) (g), Idaho Code, is an excise tax fund.

## "VIII.

"The power to tax and the power to appropriate are coextensive, and since the legislature has power to pass an excise tax for the benefit of local taxing entities, it may appropriate excise tax monies for the benefit of such local entities.

## "IX.

"Monies from state excise tax fund which have not been commingled with ad valorem taxes or ad valorem tax funds may be appropriated for county or municipal purposes without offending Article 7, Section 6, Idaho Constitution.

## "X.

"The sales tax fund created by Section 63–3638, Idaho Code, is not constitutionally limited to use for state purposes and is subject to legislative amendment.

## "XI.

"The appropriation under Section 63–3638(f) (g), Idaho Code, was made for county or municipal purposes.

## "XII.

"The appropriation from the Idaho sales tax fund made by House Bill 243 is not repugnant to Article 7, Section 6, Idaho Constitution.

## "XIII.

"It is not necessary to the validity of an appropriation that the objects of the appropriation be stated with great detail, it being sufficient if the purpose or object be stated generally. Since the legislature can levy an excise tax for general county and municipal purposes,

it can likewise appropriate such tax funds for such county and municipal purposes in general terms, leaving to the county and municipal officers to budget such funds. By limiting the use of such funds to authorized county and municipal purposes, the legislature is fixing sufficient standards to prevent this from being an unconstitutional delegation by the legislature of its power to appropriate.

"XIV.

"The appropriation made pursuant to Section 63–3638(f) (g), Idaho Code, is a lawful appropriation.

"XV.

"Subsidiary subjects in a legislative act which are naturally connected and which are germane to the main subject do not constitute two subjects within the meaning of the prohibitions of Article 3, Section 16 of the Idaho Constitution.

"XVI.

"House Bill 243 does not embrace more than one subject and does not offend Article 3, Section 16 of the Idaho Constitution.

"XVII.

"It is not necessary to the validity of an appropriation that benefits be distributed equally to everyone within the state.

"XVIII.

"An appropriation does not deny the equal protection of the laws if it benefits a class which can reasonably be distinguished from other classes.

"XIX.

"The class of owners of personal property as that term is defined in Section 63–105 Y, Idaho Code, can be reasonably distinguished from other classes.

"XX.

"Any benefits derived under House Bill 243 by the owners of personal property, as that term is defined in Section 63–105 Y, Idaho Code, are distributed fairly within that class.

"XXI.

"Where the plenary power of the legislature to exempt from taxation has not been limited by constitutional provision, such power may be exercised to encourage private initiative and thereby further the public welfare.

"XXII.

"The fostering of the industries affected by the exemptions afforded by House Bill 243 is a valid legislative purpose for which reasonable classifications may be made without violating the equal protection clauses of the state and federal constitutions.

"XXIII.

"The Plaintiffs have not shown that the classifications established by House Bill 243 are arbitrary and unreasonable, nor that such classifications are not designed to foster the industries affected thereby.

"XXIV.

"The revenue returned to the counties and other taxing entities under House Bill 243 does not have to be completely equal to the inventory revenue loss by reason of the exemptions afforded by House Bill 243.

"XXV.

"The formula under House Bill 243 for distributing the monies from the sales tax fund to the various taxing entities is reasonable in relation to the purpose for which it was designed to accomplish and has not been shown to be arbitrary.

"XXVI.

"The legislative purpose in enacting House Bill 243 was not to discriminate against holders of classes of personal property, other than that class defined as 'business inventory' by Section 63–105 Y,

Idaho Code, but rather to provide for a phaseout of the tax on such inventory with consequent exemption.

## "XXVII.

"A partial exemption as part of a phaseout program leading toward a total exemption is not contrary to the constitutional principles of equality of tax assessment under the state or federal constitution.

## "XXVIII.

"The provisions of House Bill 243 have not been shown in any way to be destructive of the system of county government envisioned by the Idaho Constitution.

## "XXIX.

"House Bill 243 is not offensive to Article 3, Section 19, Article 12, Section 2, or Article 18, Sections 1, 5 and 11, of the Idaho Constitution.

## "XXX.

"The power of the Governor to veto specific items in an appropriation bill under Article 4, Section 11, Idaho Constitution, is a grant of power to the Governor and not a limitation of the power of the legislature, and, therefore, the legislature is not required to break down an appropriation into specific items under that constitutional provision.

## "XXXI.

"That judgment for the Defendants, and each of them, be entered in accordance herewith. "

In keeping with these conclusions of law, the court entered judgment declaring H.B. No. 243 as constitutional in its entirety, and dismissed the complaint of the appellants.

Subsequent to the judgment appellants petitioned the trial court for, and were granted, a temporary injunction against the respondent Marjorie Moon, Treasurer of the State of Idaho, restraining her from making the payments required under subsections (f) and (g), I.C., § 63–3638, such injunction expiring on the 3rd day of February, 1969. On the same date the Supreme Court granted a temporary restraining order prohibiting Marjorie Moon, Treasurer of the State of Idaho, from making any such payments until further order of this Court.

From this judgment of the trial court this appeal was taken, the appellants alleging forty-one specifications of error. There is no perceivable correlation between these specifications and the six remaining fundamental issues tried in the lower court and therefore we will dispose of each of these issues in the order raised in the trial court.

First, it must be pointed out that H.B. No. 243, the constitutionality of which is attacked in the cause at bar, was amended in the same, or Thirty-Ninth Regular Session of the Idaho Legislature, by H.B. No. 387, being Chapter 377, 1967 Session Laws, beginning at page 1109. The record does not reflect that the amendatory act was called to the attention of the trial judge, but in view of our ultimate conclusion in this decision, no useful purpose would be served by remanding this cause to the trial court for further consideration thus resulting in further delay.

### H.B. NO. 243 DISBURSES FOR LOCAL PURPOSES CONTRARY TO THE PROVISIONS OF ARTICLE VII, SECTION 6 OF THE IDAHO CONSTITUTION.

The portion of H.B. No. 243 as amended by H.B. No. 387 that is objectionable to the appellants under this contention is that portion thereof which amends I.C. § 63–3638 to include subsections (f) (1), (2), (3), (4) and subsection (g) (1) and (2).[1]

1. "(h) (f) (1) Five per cent (5%) of the total amount collected and deposited in the sales tax fund during the year commencing on July 1, 1968, is hereby appropriated and shall be paid from the sales tax fund during the year commencing on July 1, 1968, to the county treasurer of each county periodically but no

■ The constitutional provision relied upon by appellants, i. e., Article VII, section 6, provides:

"The legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may by law invest in the corporate authorities thereof, respectively, the power to assess and collect taxes for all purposes of such corporation."

However, by long history of judicial interpretation this section has limited the prohibition against the legislature imposing taxes for local purposes to ad valorem or property taxes and not excise taxes. State v. Union Central Life Ins. Co., 8 Idaho 240, 67 P. 647 (1902); Ada County v. Wright, 60 Idaho 394, 92 P.2d 134 (1939). Also see State v. Camp Sing, 18 Mont. 128, 44 P. 516 (1896); State v. Silver Bowl Refining Co., 78 Mont. 1, 252 P. 301 (1926). Since the taxes involved here, i. e., those derived from the "sales tax fund" are obviously excise taxes, the prohibition contained in Article VII, section 6 of the Idaho Constitution is inapplicable.

## H.B. NO. 243 IS INVALID AS AN UNLAWFUL DELEGATION OF LEGISLATIVE POWER TO MAKE AP-

less frequently than quarterly in amounts to be determined under the provisions of subsection (i) (g) of this act section.

"(2) Ten percent (10%) of the total amount collected and deposited in the sales tax fund during the year commencing on July 1, 1969, is hereby appropriated and shall be paid from the sales tax fund during the year commencing on July 1, 1969, to the county treasurer of each county periodically but no less frequently than quarterly in amounts to be determined under the provisions of subsection (i) (g) of this act section.

"(3) Fifteen per cent (15%) of the total amount collected and deposited in the sales tax fund during the year commencing on July 1, 1970, is hereby appropriated and shall be paid from the sales tax fund during the year commencing on July 1, 1970, to the county treasurer of each county periodically but no less frequently than quarterly in amounts to be determined under the provisions of subsection (i) (g) of this act section.

"(4) Twenty per cent (20%) of the total amount collected and deposited in the sales tax fund during the year commencing on July 1, 1971, is hereby appropriated and shall be paid from the sales tax fund during the year commencing on July 1, 1971, and during each and every year thereafter to the county treasurer of each county periodically but no less frequently than quarterly in amounts to be determined in accordance with the provisions of subsection (i) (g) of this act section.

"(i) (g) The state tax commission shall compute the percentage that the average amount of taxes collected from assessments for the years 1965, 1966 and 1967 on the personal property described as business inventory in Section 63–105 Y for each county bears to the average total amount of taxes collected from assessments for said years on the personal property described as business inventory in Section 63–105 Y for all counties in the state. Such percentage so determined for each county shall be applied to the amount of sales tax fund appropriated under subsection (h) (f) herein and the resulting sum shall be paid to the county treasurer of each county for distribution to each taxing district in the county as follows:

"(1) The county commissioners in each county shall compute the percentage that the average amount of taxes collected from assessments for the years 1965, 1966 and 1967 on the personal property described as business inventory in Section 63–105 Y for each taxing district in the county bears to the average total amount of taxes collected from assessments for said years on the personal property described as business inventory in Section 63–105 Y for all taxing districts in said county. Such percentage so determined for each taxing district in the county shall be applied to the county's proportionate share of said sales tax fund and the resulting amount shall be distributed to each taxing district in the county periodically but not less frequently than quarterly by the county auditor *and applied by such taxing districts in the same manner and in the same proportions as revenues from ad valorem taxation.*

"(2) The monies set aside and appropriated to the county treasurer out of the sales tax fund above may be considered by the counties and other taxing districts and budgeted against at the same time, in the same manner and in the same year as revenues from taxation on all classes of personal property which these monies replace."

PROPRIATIONS BECAUSE THE ACT DOES NOT SPECIFY WITH PARTICULARITY THE PURPOSES TO BE SERVED OR THE OBJECTS TO BE OBTAINED.

■ This contention of appellants is based on the provisions of Article VII, section 13 of the Idaho Constitution which provides:

"No money shall be drawn from the treasury, but in pursuance of appropriations made by law."

It is their contention that a "lawful appropriation" can be made only for a particular purpose or particular object and this must be spelled out specifically in the act. The Idaho definition of the word "appropriation" is basically outlined in several Idaho cases, i. e., Jackson v. Gallet, 39 Idaho 382, 228 P. 1068 (1924); Epperson v. Howell, 28 Idaho 338, 154 P. 621 (1916); McConnel v. Gallet, 51 Idaho 386, 6 P.2d 143 (1931); State ex rel. Williams v. Adams, 90 Idaho 195, 409 P.2d 415 (1965). These cases define an appropriation as (1) authority from the legislature, (2) expressly given, (3) in legal form, (4) to proper officers, (5) to pay from public monies, (6) a specified sum, and no more, and (7) for a specified purpose, and no other. The first five of these requirements need no discussion for they are obviously met in the provisions of H.B. No. 243, as amended. As to requirement No. (6), i. e., a specified sum, and no more, this is amply met under the tests set up in McConnel v. Gallet, 51 Idaho 386, 6 P.2d 143 (1931), wherein the court noted on page 390 of 51 Idaho, on page 144 of 6 P.2d:

"It will be noticed that no sum was definitely fixed by the appropriation. An appropriation within the meaning of section 13, article 7, has been defined as 'authority from the legislature expressly given in legal form, to the proper officers, to pay from the public moneys a specified sum, and no more, for a specified purpose, and no other.' Herrick v. Gallet, supra, 35 Idaho 13, 204 P. 477, 478. However, from an examination

of the authorities it appears that this element of specificness is necessary only when the appropriation is made payable from the general fund and is required solely as a protection against unlimited withdrawals from such fund under authority of a general appropriation. When, as here, the appropriation is made payable from a special fund, it is not necessary to appropriate a specific sum. Ryan v. Riley, 65 Cal.App. 181, 223 P. 1027; Humbert v. Dunn, 84 Cal. 57, 24 P. 111; Ristine v. State, 20 Ind. 328. The act is clearly an attempt to make a continuing appropriation of all money that at any time may be in the adjutant general's contingent fund; and the authorities are unanimous that, in the absence of a constitutional inhibition against continuing appropriations, they are valid. We have no such inhibition."

Thus the sixth requirement has been met, for this is an appropriation from the "sales tax fund" and not the "general fund."

■ The seventh and last requirement of the *Jackson-Epperson-McConnel-Adams* definition of a legal appropriation is that the monies be appropriated for a specific purpose, and no other. The query is: Did the people of the State of Idaho, through their representatives in the legislature, know. for what purpose they were setting aside the percentage of the sales tax revenue to the various taxing units throughout the state? H.B. No. 387 (chapter 377, 67 Session Laws, on page 1112) amended I.C. § 63–3638(g) (1) in part as follows (as was previously quoted in Note 1 herein):

"* * * Such percentage so determined for each taxing district in the county shall be applied to the county's proportionate share of said sales tax fund and the resulting amount shall be distributed to each taxing district in the county periodically but not less frequently than quarterly by the county auditor *and applied by such taxing districts in the same manner and in the same proportions as revenues from ad valorem taxation.*"

Section (g) (2) provides:

"The moneys set aside and appropriated to the county treasurer out of the sales tax fund above may be considered by the counties and other taxing districts and budgeted against at the same time, in the same manner and in the same year as revenues from taxation on all classes of personal property which these moneys replace."

It is, therefore, apparent that the legislature knew, or should have known, exactly for what purposes the sales tax refunds were to be used by the counties and the various taxing units within the counties.

Thus all the requirements of the judicial interpretation of Article VII, section 13 of the Idaho Constitution have been met by H.B. No. 243 as amended by H.B. No. 387.

THE EXEMPTION BY H.B. NO. 243 OF ALL PERSONAL PROPERTY CONSISTING OF LIVING ORGANISMS FROM AD VALOREM TAXATION DENIES APPELLANTS EQUAL PROTECTION BY INVIDIOUSLY DISCRIMINATING AGAINST THEM WITHOUT RATIONAL JUSTIFICATION.

The appellants allude, of course, to that portion of H.B. No. 243 which adds to Chapter 1 Title 63 of the Idaho Code, § 63–105 Y, and provides:

"Commencing on January 1, 1971 the following property is exempt from taxation: business inventory. For the purpose of this section, 'business inventory' means all items of tangible personal property described as:

"(1) All livestock, fur-bearing animals, fish, fowl and bees.

"(2) Any nursery stock, stock-in-trade, merchandise, products, finished or partly finished goods, raw materials, supplies, containers and other personal property which is held for sale or consumption [consumption] in the ordinary course of the taxpayer's manufacturing, farming, wholesale jobbing, or merchandising business."

A fundamental purpose of this legislation was to relieve the ordinary merchant or businessman of the inequitable ad valorem taxes which had heretofore been assessed against him on goods, wares and merchandise which he kept in stock solely for the purposes of resale and not for personal use. For this purpose all of the items listed in 63–105 Y (2) are concededly within the ordinary concept of the definition of "business inventory" and with this appellants have no argument. But when "business inventory" was defined to include "all livestock, fur-bearing animals, fish, fowl and bees," and when it is a matter of common knowledge by most every citizen of the State of Idaho, as it is stipulated by the parties to this cause, that "there are sheep in Idaho held for the production of wool, dairy cows in Idaho held for the production of milk, breeding cattle held for the production of calves, horses held for the purpose of pulling plows, wagons, etc., and horses held for rental for riding purposes" in addition to there being sheep, cattle and horses in Idaho which are held for sale, the classification of *all livestock* as "business inventory" obviously becomes fictitious, specious and almost unbelievable. This is particularly true when such fictional definition is resorted to for the purpose of granting the owners of such personal property complete exemption from ad valorem taxation by 1971.

Why the legislature took this circuitous route to grant an exemption favoring the farming and livestock industry is not apparent but the court can find no constitutional prohibition to this method.

This court as early as 1914 in Achenbach v. Kincaid, 25 Idaho 768, 140 P. 529 (1914) stated:

"We have no hesitancy in saying that we are not thoroughly converted to the advisability of exempting any particular class of property from taxation, but, on the contrary, firmly believe that all property of every kind and description should bear its just proportion of taxation, and uniformity and equalization of taxation

are just as essential as taxation. However, we are not disposed to declare the law to be other than we find it. The Legislature is answerable to the people, and if unfortunately through legislative enactment certain property has been exempted from taxation, the people will correct the error through the Legislature where alone the power exists." 25 Idaho at page 782, 140 P. at page 534.

In arriving at this conclusion, we are reminded of certain fundamental principles of constitutional law: (1) In determining the constitutionality of a legislative enactment, fundamental principles must ever be kept in mind and rigidly observed. Statutes are presumed valid and all reasonable doubts as to constitutionality must be resolved in favor of validity. (2) When a statute is susceptible to two constructions, one of which would render it invalid and the other would render it valid, the construction which sustains the statute must be adopted by the courts. (3) The burden of showing unconstitutionality of a statute is upon the party who asserts it and invalidity must be clearly shown. (4) It is the duty of the courts to uphold the constitutionality of legislative enactments when that can be done by reasonable construction. (5) Unlike the federal constitution, the state constitution is a limitation, not a grant, of power. We look to the state constitution not to determine what the legislature may do, but to determine what it may not do. If an act of the legislature is not forbidden by the state or federal constitutions, it must be held valid. Eberle v. Neilson, 78 Idaho 572, 306 P.2d 1083 (1957); Idaho Telephone Company v. Baird, 91 Idaho 425, 423 P.2d 337 (1967).

Applying these principles to the facts in the cause at bar, there is no doubt that the Thirty-Ninth Legislature could have completely exempted "all livestock, fur-bearing animals, fish, fowl and bees" from all ad valorem taxation by direct action and without resorting to the fiction of classifying such personal property as "business in-ventory." Such exemption would have been valid and binding.

"The power of the state to classify, define and exempt for taxation purposes is plenary and exclusive under our Constitution."

\* \* \* \* \* \*

"The state has the power to classify for the purposes of taxation, only limited by the rule that the classification must be reasonable and founded upon differences between the parties. The equality clause does not forbid reasonable classification. Discrimination through classification is said to violate that clause only where it is such as 'to preclude the assumption that it was made in the exercise of legislative judgment and discretion.' "

\* \* \* \* \* \*

"Classifications will always be upheld where they rest upon differences which have a logical relation to the subject sought to be regulated or burdened and are not palpably arbitrary and capricious." Diefendorf v. Gallet, 51 Idaho 619, 10 P.2d 307 (1932).

This court has made a similar pronouncement in Williams v. Baldridge, 48 Idaho 618, 284 P. 203 (1930). The court in that case further commented:

"Section 5 of art. 7 expressly leaves with the Legislature its plenary power with regard to exemptions. In this respect, Idaho is almost unique among the western states. We have not attempted a complete search but among western states we believe Wyoming (section 12, article 15, Wyoming Constitution) and Idaho (section 5, of article 7) are alone in their expressed refusal to limit the plenary power of their Legislatures to grant such exemptions as they may see fit. Most states have limited this power to such exemptions as are expressly enunciated in their Constitutions. Idaho was comparatively late in making its Constitution and the almost uniform practice of other states must have been known to those who wrote the Constitution. We

believe section 5 of article 7 is significant as indicating a deliberate intention to leave with the Legislature a very broad discretion in dealing with tax exemptions. This conclusion is borne out by a reference to the Constitutional Debates, pp. 1638, 1645, 1660, 1692, 1703, 1721, 1722, 1758–1769, 1775. This court has so held in Achenbach v. Kincaid, 25 Idaho 768, 140 P. 529."

■ It is well to note at this point that the parties stipulated, and the trial court found and held, that the inventory tax phase-out of H.B. No. 243 would benefit Idaho's economic climate. It therefore cannot be held that the classification of the property under § 63–105 Y was arbitrary, unreasonable or unjust so as to warrant setting it aside as unconstitutional.

■ It is suggested, however, that the exemption of such producing properties such as production herds of cattle and horses and production flocks of sheep amounts to a discrimination which is violative of the Fourteenth Amendment of the United States Constitution because it is discriminatory against other types of productive personal property which is not exempt from the ad valorem taxes. This contention is answered fully by the court in J. C. Penny Co. v. Diefendorf (1934), 54 Idaho 374, at page 400, 32 P.2d 784, at page 795, where it is held:

"It was never intended by the Fourteenth Amendment to compel the state to adopt an iron rule of equal taxation, it is sufficient if each, within a certain class, receive the same treatment. [citation] It has the right to exclude from taxation by way of exemptions the kinds of business which it desires to foster. [citations] And it has the power to tax more heavily the kinds of business which it wishes to discourage. [citations] by the oleomargarine laws it has protected and fostered the business of the farmers and dairymen. [citation] It has favored national banks by eliminating, through prohibitive tax, the issuance of state bank notes. [citation] If there has

been any doubt in the past as to the validity of such legislation it has been put at rest by the decision of the United States Supreme Court in the case of A. Magnano Co. v. Hamilton, 292 U.S. 40, 54 S.Ct. 599, 78 L.Ed. 1109, decided April 2, 1934. The power of Congress and the state Legislature to thus legislate has been continuously upheld by federal and state courts."

See also State ex rel. Anderson v. Rayner, 60 Idaho 706, 96 P.2d 244 (1939); John Hancock Mutual Life Ins. Co. v. Haworth, 68 Idaho 185, 191 P.2d 359 (1948); Idaho Telephone Company v. Baird, 91 Idaho 425, 423 P.2d 337 (1967). Certainly fostering the livestock and farming industry in Idaho is a valid purpose.

It is contended by appellants, however, that in *Baird*, supra, this court determined that the legislature is empowered only to grant total exemption from property and not to grant less than total exemption as appellants claim the legislature did by enacting I.C. § 63–105 Y (S.L.1967, Ch. 116, § 2, p. 230). Specifically, appellants refer to language of this court in *Baird*, at 91 Idaho 430, at 423 P.2d 342 as follows:

"The tenor of the entire discussion over provisions of Article VII, relating to finance and revenue, clearly indicates that the Framers of Idaho's Constitution intended only two alternatives: either that property would be subject to one uniform non-discriminatory rate of assessment and taxation or, that it would be entirely exempt from the burden of ad valorem taxation."

This language was used in consideration of the debates at the 1889 Idaho Constitutional Convention. At most it is *obiter dictum*, for the issue before this court in that case was not constitutional validity of exemptions from taxation, but was the constitutional validity of differences in ratios of assessment of property.

■ The 1967 acts wholly exempted "business inventory" from taxation after January 1, 1971. The percentage of exemptions during the interim period between en-

actment and January 1, 1971 are spelled out. If the legislature under the constitution has the authority to grant an exemption from taxation in toto, and in futuro, which authority has not been questioned here, can it be doubted that the legislature, in its discretion and judgment and for the welfare of the state, can lessen the impact of the total exemption from taxation over a period of some four years? No constitutional prohibition to this legislative action has been called to our attention, and it is our conclusion that such plan was within the sphere of constitutional legislative authority.

We therefore conclude appellants' contentions on the third issue are not meritorious.

H.B. No. 243 VIOLATES ARTICLE III, SECTION 19, ARTICLE XII, SECTION 2, AND ARTICLE XVIII, SECTIONS 1 AND 5, BECAUSE IT DESTROYS, IN PART, THE SYSTEM OF COUNTY GOVERNMENT ENVISIONED BY THE IDAHO CONSTITUTION.

 We have carefully examined and considered the provisions of the above-mentioned constitutional articles and sections and find that H.B. No. 243 as amended by H.B. No. 387 do not violate any of them in any manner.

H.B. No. 243 VIOLATES ARTICLE IV, SECTION 11, OF THE IDAHO CONSTITUTION BECAUSE IT ATTEMPTS TO CIRCUMVENT THE POWER OF THE GOVERNOR OF THE STATE OF IDAHO TO DISAPPROVE THE ITEMS IN APPROPRIATIONS BILLS.

 The pertinent part of this article and section provides:

"The governor shall have power to disapprove of any item or items of any bill making appropriations of money embracing distinct items, * * *."

It is appellant's contention that since the appropriation under the act does not designate particular items for which the money may be expended by the various taxing units to which the funds are to be distributed, the governor's power under this constitutional provision has been circumvented and thus is violative of the constitution. The language of the article and section itself does not warrant the interpretation that every appropriation must be broken down into several items. Instead it provides the governor's power to "disapprove of any item or items." Counsel for neither side has cited any authority which requires any particular appropriation to be broken down into any particular number of items. The appropriation contained in H.B. No. 243 as amended by H.B. No. 387 was subject to the governor's veto but was not vetoed.

We hold this contention of appellants is without merit.

THAT THE FORMULA FOR DISTRIBUTING THE SALES TAX FUNDS TO THE COUNTIES IN TAXING DISTRICTS UNDER I.C. § 63–3638(f) (g) IS VOID BECAUSE UNREASONABLE AND ARBITRARY.

Appellants' contention is that the distribution as provided under the act is unreasonable and arbitrary because it necessarily is based upon arbitrary unequal ratios of assessments and levies within the respective counties and taxing districts and thus results in inequitable distribution of the sales tax funds.

For the purposes of this issue the parties stipulated in the trial court that the annual reports of the State Tax Commission of the State of Idaho for the years 1965, 1966 and 1967 would be relevant and admissible and considered for all purposes. It was also stipulated that the depositions of Harold Johnson, Deputy Tax Commissioner, Idaho State Tax Commission, should also be admitted and considered by the court in determining this issue.

It has already been determined in this opinion that the action of the legislature in enacting H.B. No. 243 as amended was not unconstitutional insofar as granting the

exemptions as provided therein. This is because the legislature has plenary power in this area, and unless it is exercised unreasonably or arbitrarily the courts cannot interfere with that power. It was not so exercised in the bill attacked, we have held, because the granting of such exemptions was for the benefit of the economic welfare of the State of Idaho. This was stipulated by the parties and so found by the trial court.

The formula for distribution on a graduated basis of a portion of the sales tax fund to the counties and other taxing units therein under the provision of the bill, as amended, is merely an attempt to reimburse those taxing units for the loss of revenue resulting from the exemption in the process of the business inventory phase-out. The appellants have failed to convince this court that the formula used is arbitrary or unreasonable in view of the purposes of the formula. They were equally unsuccessful in convincing the trial court, for among its conclusions of law (really a combination of finding of fact and conclusion of law) is the following:

> "The formula under House Bill 243 for distributing the monies from the sales tax fund to the various taxing entities is reasonable in relation to the purpose for which it was designed to accomplish and has not been shown to be arbitrary."

It has long been a rule in Idaho that where the findings of fact and conclusions of law of the trial judge are supported by competent and substantial evidence, they will not be overturned on appeal. I.R.C.P. 52(a); Lindhartsen v. Myler, 91 Idaho 269, 420 P.2d 259 (1966); King v. MacDonald, 90 Idaho 272, 410 P.2d 969 (1965). We are constrained to agree with the trial court that the formula for distribution under the act is not unreasonable or arbitrary.

In addition to these six principal issues that were raised in the trial in the lower court, appellants raise three additional issues, arising after the trial. First, it is contended that the trial court erred in denying appellants' motion for a limited rehearing on appellants' motion for a summary judgment. The lower court committed no error in denying that motion. It is recited in the findings of fact and conclusions of law of the trial court that prior to the commencement of the trial of the issues on their merit, the appellants had withdrawn their motion for summary judgment and the minutes of the trial court corroborate this statement. Having withdrawn the summary judgment and proceeded to trial on the merits, appellants cannot now be heard to complain concerning denial of a motion for a rehearing on their motion for a summary judgment after a trial which resulted in an unfavorable judgment.

Secondly, appellants complain that the trial court erred in denying their motion to amend findings of fact and conclusions of law and for the entry of a new judgment on the grounds that those entered were contrary to the facts and law as contended by appellants. The third additional error claimed by appellants is based on the lower court's denial of their motion for a new trial. Both of these motions are addressed to the sound discretion of the trial court. Unless such discretion clearly appears to have been unwisely exercised or to have been manifestly abused, it will not be disturbed upon appeal. Findley v. Woodall, 86 Idaho 439, 387 P.2d 594 (1963); I.R.C.P. 52(a); Clark v. Foster, 87 Idaho 134, 391 P.2d 853 (1964); Warren v. Eshelman, 88 Idaho 496, 401 P.2d 539 (1965); Kuhn v. Dell, 89 Idaho 250, 404 P.2d 357 (1965); Stanberry v. Gem County, 90 Idaho 222, 409 P.2d 430 (1965); Ricard v. Gollen, 91 Idaho 335, 421 P.2d 130 (1966); Blaine v. Byers, 91 Idaho 665, 429 P.2d 397 (1967); Archer v. Shields Lbr. Co., 91 Idaho 861, 434 P.2d 79 (1967).

The judgment of the trial court is affirmed. Costs to respondents.

McFADDEN, C. J., McQUADE and DONALDSON, JJ., and TOWLES, D. J., concur.